**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

THE UNITED STATES OF AMERICA,

          Plaintiff,

    v.

THE COMMONWEALTH OF
VIRGINIA, JAY JONES, in his official
capacity as Attorney General of Virginia,
and STEVE DESCANO, in his official
capacity as Commonwealth Attorney for
Fairfax, Virginia,

          Defendants.

No. 3:26-cv-00545-REP

**REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION...........................................................................................................................1

ARGUMENT.................................................................................................................................1

    I.        **The United States is Likely to Succeed on the Merits of its Claims that the Mask Ban Violates Principles of Intergovernmental Immunity**........................................1

            A.      **The Mask Ban Improperly Regulates the Federal Government**.................1

            B.      **The Mask Ban Improperly Discriminates Against the Federal Government**........................................................................................................16

    II.      **An Injunction Against Defendant Descano would be Proper**................................11

    III.    **The United States Faces Irreparable Harm Absent Preliminary Relief**...............12

    IV.    **The Balance of Equities and the Public Interest Weigh in the United States' Favor**.........................................................................................................................16

CONCLUSION.............................................................................................................................18

i

## TABLE OF AUTHORITIES

**Cases**

*Blackburn v. United States*,
  100 F.3d 1426 (9th Cir.1996) ................................................................................. 6

*Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*,
  23 F. App'x 134 (4th Cir. 2001) ........................................................................... 15

*Centro Tepeyac v. Montgomery Cnty.*,
  722 F.3d 184 (4th Cir. 2013) ................................................................................ 16

*City of Arcata*,
  629 F.3d 986 (9th Cir. 2010) ............................................................................ 6, 9

*Clifton v. Cox*,
  549 F.2d 722 (9th Cir. 1977) .................................................................................. 6

*CoreCivic, Inc. v. Governor of New Jersey*,
  145 F.4th 315 (3d Cir. 2025) .................................................................................. 4

*DHS v. Texas,*
  144 S. Ct. 715 (2024) .............................................................................................. 5

*Fleet Feet, Inc. v. Nike Inc.*,
  419 F. Supp. 3d 919 (M.D.N.C. 2019) ................................................................. 15

*Geo Grp. v. Inslee*,
  151 F.4th 1107 (9th Cir. 2025) .............................................................................. 4

*Geo Grp. v. Newsom*,
  50 F.4th 745 (9th Cir. 2022) .................................................................................. 4

*Hardy v. Fischer*,
  701 F. Supp. 2d 614 (S.D.N.Y. 2010) ................................................................. 15

*In re Neagle*,
  135 U.S. 1 (1890) .................................................................................................... 6

*Johnson v. Maryland*,
  254 U.S. 51 (1920) .................................................................................................. 3

*Kelley v. Johnson*,
  425 U.S. 238 (1976) ................................................................................................ 3

ii

*Larson v. Valente*,
456 U.S. 228 (1982)............................................................................................ 12

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*,
2 F.4th 330 (4th Cir. 2021) ............................................................................... 12

*Massachusetts v. E.P.A.*,
549 U.S. 497 (2007)............................................................................................ 12

*Mayo v. United States*,
319 U.S. 441 (1943).............................................................................................. 3

*McCulloch v. Maryland*,
17 U.S. (4 Wheat.) 316 (1819)............................................................................. 3

*Mills v. District of Columbia*,
571 F.3d 1304 (D.C. Cir. 2009) ........................................................................ 12

*NetChoice v. Jones*,
822 F. Supp. 3d 656 (E.D. Va. 2026) ............................................................... 15

*Owens v. District of Columbia*,
631 F. Supp. 2d 48 (D.D.C. 2009) .................................................................... 12

*Quince Orchard Valley Citizens Ass'n v. Hodel*,
872 F.2d 75 (4th Cir. 1989) ........................................................................ 15, 16

*Rowe v. N.H. Motor Transp. Ass'n*,
552 U.S. 364 (2008).............................................................................................. 9

*State v. Ivory*,
906 F.2d 999 (4th Cir. 1990) ............................................................................... 6

*Steffel v. Thompson*,
415 U.S. 452 (1974)............................................................................................ 14

*Sw. Airlines Co. v. Saxon*,
596 U.S. 450 (2022)............................................................................................ 10

*Texas v. DHS*,
123 F.4th 186 (5th Cir. 2024) ............................................................................. 5

*Trump v. Boyle*,
145 S. Ct. 2653 (2025)........................................................................................... 5

iii

*United States v. California*,
   173 F.4th 1060 (9th Cir. 2026) ................................................................... passim

*United States v. Washington*,
   596 U.S. 832 (2022)........................................................................................ 11

**Statutes**

Cal. Penal Code § 13654(e) ................................................................................. 2

Va. Code §
   15.2-1627(B).................................................................................................. 11

Va. Code §
   19.2-83.6:1(A)............................................................................................ 4, 7
   19.2-83.6:1(B)............................................................................................ 5, 7
   19.2-83.6:1(C)(1)-(7) .................................................................................... 10
   19.2-83.6:1(C)(5) .......................................................................................... 11
   19.2-83.6:1(C)(8) .......................................................................................... 11
   19.2-83.6:1(D)........................................................................................... 5, 10
   19.2-83.6:1(E) ................................................................................................ 2

**Regulations**
   8 C.F.R. § 287.8(c)(2)(iii) ...............................................................................5

**Other Authorities**

https://www.migrationpolicy.org/data/unauthorized-immigrant-population/county/51059 (last
   visited June 26, 2026)....................................................................................12

https://spectrumlocalnews.com/nys/central-ny/politics/2026/05/29/hochul-signs-measures-to-
   limit-ice-cooperation (last visited June 26, 2026) ........................................9

https://statecourtreport.org/our-work/analysis-opinion/can-states-ban-federal-officers-wearing-
   masks (last visited June 26, 2026)...................................................................9

## INTRODUCTION

This Court should enjoin Defendants from enforcing the newly enacted Section 19.2-83.6:1 of the Virginia Code (hereinafter "Mask Ban") because the United States is likely to succeed on the merits of its claim that the Mask Ban impermissibly regulates the Federal Government. The law is a patently unconstitutional attempt to target and directly regulate federal officers. Indeed, a unanimous Ninth Circuit held that a nearly identical law was unconstitutional at the preliminary injunction stage. The Commonwealth of Virginia's response (ECF 22, Comm. Resp.) is to destroy the Supremacy Clause with inapplicable and nonsensical standards. Those attempts to place their policy choices over the Constitution fail. The law is also dangerous. It requires federal officers to risk their safety and federal operations or else face potential state criminal prosecution. This sets up a serious clash between state and federal officers. As a result, the United States will suffer immediate irreparable harm if this illegal statute is not preliminary enjoined. Similarly, the public interests and equities strongly weigh against this dangerous and illegal law. This Court should enter an injunction before the law goes into effect on July 1, 2026.

## ARGUMENT

I.   **The United States is Likely to Succeed on the Merits of its Claims that the Mask Ban Violates Principles of Intergovernmental Immunity.**

A.   **The Mask Ban Improperly Regulates the Federal Government**

1.   The Commonwealth invokes its police power in order to circumvent the principles of intergovernmental immunity. This it cannot do, as these principles prohibit the Commonwealth from regulating the Federal Government "in any manner and to any degree." *United States v. California*, 173 F.4th 1060, 1068 (9th Cir. 2026). A unanimous Ninth Circuit recently granted a preliminary injunction against a similar law requiring federal law enforcement officers to visibly

display identification while executing their enforcement duties, holding that the United States was likely to succeed on the merits of its Supremacy Clause claim. *See generally id.*

The Commonwealth notably does not address *California* in its discussion regarding regulation of the Federal Government. *See* Comm. Resp. at 9-13. Instead, the Commonwealth attempts to distinguish *California* by claiming that, unlike Virginia's law, California's law was discriminatory and required the United States to adopt a model policy. *Id.* at 14-15. That is wrong. There was no discrimination claim against the identification requirement enjoined by the Ninth Circuit. Nor was the policy exception challenged in the Ninth Circuit, which was identical to the policy exception in Virginia's law. *Compare* Cal. Penal Code § 13654(e) (identification requirement and criminal penalties for noncompliance do not apply "to any law enforcement agency, or its personnel, if that agency maintains and publicly posts a written policy pursuant to [§ 2 of the Act]") *with* Va. Code § 19.2-83.6:1(E) (criminal penalties for noncompliance with Mask Ban do not apply where "the law-enforcement agency that employs such law-enforcement officer has adopted and established a written policy for the use of facial coverings, using as guidance the model policy established by the Department of Criminal Justice Services under § 9.1-102.") So *California* is precisely on point to the improper regulation analysis here, and the Commonwealth does not argue otherwise. 173 F.4th at 1066-67. Fundamentally, the Ninth Circuit unanimously rejected all of the arguments the Commonwealth now employs, emphatically holding that "if a state law directly regulates the conduct of the United States, it is void irrespective of whether the regulated activities are essential to federal functions or operations, and irrespective of the degree to which the state law interferes with federal functions or operations." *Id.* at 1067. The Commonwealth's only recourse appears to be inviting this Court to create a circuit split on the issue. This Court should reject the Commonwealth's argument, as it runs afoul of the very core of

2

our constitutional system, which makes clear that "the activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943).

**2.**     The Commonwealth is unable to cite any law or precedent allowing it to regulate federal officers. Instead, it simply argues that its general police powers can justify such impermissible regulation. *See* Comm. Resp. at 8-12. The mere invocation of a general police power over public safety does not permit every state in the union to micromanage federal law enforcement. Tellingly, the Commonwealth points to no examples where this has been allowed. Instead, the Commonwealth reputedly cites *Kelley v. Johnson*, which simply rejected First Amendment challenges to a hairstyle policy imposed by a police department. 425 U.S. 238, 245 (1976). That hardly supports a state regulating federal officers in the performance of their duties. While the Commonwealth is free to regulate its own law enforcement officers, it may not directly regulate federal officers because "[t]he Supremacy Clause prohibits States from enacting a law that directly regulates federal operations even if the law regulates state operations in the same manner." *California*, 173 F.4th at 1067 (citing *Johnson v. Maryland*, 254 U.S. 51, 56–57 (1920)). The Commonwealth attempts to turn the Constitution on its head, placing the Tenth Amendment over the Supremacy Clause. But from the start, the point of the Constitution was that "states have no power" to "in any manner control[ ] the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819). The Commonwealth's attempt at nullification thus fails.

Indeed, the Commonwealth does not hide its intentions. As the Commonwealth's response makes abundantly clear, the Mask Ban was enacted with the aim of directly regulating federal officers, notably those enforcing the immigration laws. *See* Comm. Resp. at 3 ("The General Assembly acted against a national backdrop in which several high-profile federal

3

immigration-enforcement operations drew widespread attention for the use of masked or unidentified officers in civilian settings."). In fact, the Commonwealth does not even address the United States' arguments regarding pre-enforcement standing, and particularly does not disavow its intent to enforce the Mask Ban.[1] It fully admits its desire to criminally charge federal officers for the performance of their duties. Even for federal contractors, such obstructive purposes are unconstitutional. *See CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 322 (3d Cir. 2025) ("We must probe the 'purpose or self-evident operation of a statute' to see if it is used to evade the limits on immunity 'by indirectly achieving the same result.'") (citation omitted).

3.      The Commonwealth tries to resist the ironclad rule that states cannot regulate the Federal Government absent its consent by muddying the waters. Ironically, it starts by claiming that it can regulate "the manner in which federal employees carry out their duties," citing *Geo Grp. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022) and *Geo Grp. v. Inslee*, 151 F.4th 1107, 1118 (9th Cir. 2025). Comm. Resp. at 7. But those cases were about federal contractors, which the Ninth Circuit made clear have immunity that is "substantially *narrower* than that of a federal *employee* or other federal instrumentality." *Newsom*, 50 F.4th at 755 (en banc) (emphasis added) (still holding that law regulating contractors was unconstitutional). This law does not regulate federal contractors, however, it directly criminalizes the action of "any full-time or part-time *employee* of a federal law-enforcement agency" in the "performance of his official duties." Va. Code § 19.2-83.6:1(A) (emphasis added). That is precisely what the Constitution forbids. The Commonwealth's argument would collapse the distinction between contractors and employees that the very cases it cites rely on.

---

[1] Indeed, at the scheduling conference, the Commonwealth declined to preserve the status quo and refrain from enforcing the Mask Ban in exchange for a less condensed briefing schedule.

Defendants similarly rely on *Texas v. DHS*, 123 F.4th 186, 205 (5th Cir. 2024), to argue that the mask ban and identification requirements of the challenged law "at most, only incidentally affects" federal government operations. Comm. Resp. at 9. The Ninth Circuit rejected that very same argument in *California*, 173 F.4th 1060. There, the court observed that the law was likely not one of general applicability because it pertained to law enforcement officers specifically. *Id.* at 1068. The same is true here. *See* Va. Code § 19.2-83.6:1(B), (D) (provisions pertaining to law enforcement officers). The California law requiring federal officers to wear visible identification, like the challenged Virginia law requiring the same and barring masks in most circumstances, was a direct regulation of federal government and *any* direct regulation of the federal government, even if coextensive with federal regulations, is unconstitutional. *California*, 173 F.4th 1068.

Further, *Texas* was wrongly decided. In fact, the Supreme Court vacated a previous injunction in that case the only time the issues were presented to that Court. *See DHS v. Texas,* 144 S. Ct. 715 (2024). Such interim orders "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). And Texas is distinguishable. In *Texas v. DHS*, Texas sued to prevent the U.S. Border Patrol from cutting a fence erected by Texas on State land under the Administrative Procedure Act (APA), ostensibly to allow migrants into Texas. 123 F.4th at 193. The Fifth Circuit found Texas was "acting as a proprietor, not a regulator" and specifically held that Texas did "not seek to control how Border Patrol agents carry out their duties" because the Texas law was a "generally applicable state law" such as trespass that applies equally to private citizens. *Texas*, 123 F.4th at 205-07. That stands in stark contrast to the laws here. The Commonwealth is not bringing claims under the APA, but instead passed a criminal law. And that law is not generally applicable nor does it act as a proprietor of its own property, but rather a regulator of federal agents.

5

The Commonwealth attempts to defend its imposition of criminal penalties on federal officers for failing to comply with the Mask Ban. Comm. Resp. at 9. According to the Commonwealth, a federal officer can raise a defense to this law if the officer's actions were necessary and proper to the discharge of his or her duties. *Id.* The Ninth Circuit in *California* explained that the "necessary and proper" standard does not apply to situations such as this one, where the law at issue "directly regulates inherently governmental conduct of federal officers carrying out their duties *under federal authority.*" 173 F. 4th at 1068 (emphasis in original). The cases the Commonwealth relies upon dealt with generally applicable laws proscribing murder and related crimes, which regulate all private individuals as well. *See* Comm. Resp. at 9 (citing *State v. Ivory*, 906 F.2d 999, 1000 (4th Cir. 1990) (unintentional death by motor vehicle); *In re Neagle*, 135 U.S. 1, 75 (1890) (murder dismissed for immunity); *Clifton v. Cox*, 549 F.2d 722, 723 (9th Cir. 1977) (second-degree murder and involuntary manslaughter dismissed for immunity)). For example, in *In re Neagle*, the law at issue was one prohibiting murder for all private individuals, not just law enforcement officers. 135 U.S. at 3. The Court found that since the federal officer was acting in the course of his duties when he killed someone, he could not be liable for murder under state law. *See id.* at 75.

If the Commonwealth was right, it would destroy all of the case law facially enjoining state laws under intergovernmental immunity. By contrast, laws like the Mask Ban cannot be enforced against the Federal Government because they violate intergovernmental immunity on their face, and no further inquiry is necessary. *See City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) ("We have relied on intergovernmental immunity in refusing to enforce state statutes against the federal government under circumstances far more ambiguous than those present here."); *Blackburn v. United States*, 100 F.3d 1426 (9th Cir.1996) (a statute imposing safety requirements on resorts, as

6

applied to the Federal Government, would violate the Supremacy Clause). By the Commonwealth's logic, states could criminalize any law enforcement practice employed by the Federal Government and place the burden on federal officers to justify why the federally authorized practice is necessary and proper. That is not the law, and the Commonwealth's arguments to this end fail.

4.      While the United States does not believe states can regulate federal officers at all, at most states may pass laws that (1) are general, such as murder or trespass, that apply to private parties too *and* (2) do not regulate a core government function. For example, in *Johnson v. Maryland*, the Supreme Court held that a state law requiring driver's licenses ran afoul of intergovernmental immunity as applied to U.S. Postal Service workers even though it was a general law applying to private citizens as well because the law required state licensing for postal workers to perform their core duties. 254 U.S. at 57. The mask ban fails on both fronts.

First, the Mask Ban is far from a general law. It does not apply to private citizens, only "law enforcement officers" including federal officers. Va. Code § 19.2-83.6:1(A). The Commonwealth oddly claims the law is general because it applies to state and federal law enforcement officers alike. If that was the case, it would collapse the regulation analysis with the distinct discrimination analysis. Instead, the law is not general the way traffic or murder laws are as they apply to everyone, not just law enforcement officers. Second, even if the law was general, the law on its face regulates the core federal function of immigration enforcement. Indeed, it only applies to a law enforcement officer "engaged in the performance of his official duties," i.e., the enforcement of federal law. Va. Code § 19.2-83.6:1(B). The Ninth Circuit in *California* recognized that a law that "applies exclusively to law enforcement agencies and their officers, including federal law enforcement agencies and federal law enforcement officers" that "directly regulates

conduct reserved to sovereigns" "is barred by intergovernmental immunity." 173 F. 4th at 1068. The same is true of the Mask Ban. The fact remains that the Mask Ban directly regulates a federal function and that is unconstitutional.

**5.**      Even if this Court were to entertain the Commonwealth's arguments regarding incidental effects, the Mask Ban is much more impactful. State restrictions on facial coverings and identification requirements pose serious safety and operational concerns for federal law enforcement officers, including jeopardizing operations, doxxing of officers, and chilling of law enforcement efforts. Weiss Decl. ¶ 41-47; Allen Decl. ¶ 15-17; Kaufmann Decl. ¶ 15-16; Hargis Decl. ¶ 6, 12. Indeed, the Mask Ban will impede federal officers' ability to conduct undercover investigations and surveillance, and can lead to the flight of dangerous subjects, placing officers and the public at risk. Weiss Decl. ¶ 44-45. Officers merely executing their federal duties will continue to be targeted for threats and violence by the public, along with their families. Hargis Decl. ¶ 9-11; Kaufmann Decl. ¶ 11-12. This is far from incidental because the Mask Ban was enacted with the intent to directly affect federal law enforcement operations. Without Court intervention, it will succeed.

The Commonwealth contends that the use of facial coverings and removal of identifiers by immigration enforcement officers is "a recent, ad hoc departure from longstanding federal practice," is discretionary, and thus must be incidental. Comm. Resp. at 11. That is wrong. Virgina may disagree with the policy choice but that does not mean they can force federal officers into the Commonwealth's preferred policy. Indeed, Chapter 8, Section 287.8 sets the standards for immigration enforcement activities. Subsection (c) sets out general procedures by which officers must abide, including identifying himself or herself as an immigration officer as soon as it is practical and safe to do so when conducting an arrest. 8 C.F.R. § 287.8(c)(2)(iii). The Mask Ban

takes this discretion away from federal officers in reckless disregard for the safety of the officers and others. *See* Allen Decl. ¶ 19; Kaufmann Decl. ¶ 16. And "[a] state or local law that directly regulates the conduct of the federal government or discriminates against it is invalid, even if it is no more restrictive than federal law." *City of Arcata*, 629 F.3d at 991-92.

The Commonwealth also argues the law is incidental because it does not stop federal officers from arresting and otherwise enforcing immigration law. That is far too general. By the Commonwealth's logic, Texas could require officers to wear masks, New York could dictate what weapons are used, California could micromanage the training of K-9s, and Florida could require IRS agents to wear pink all under the threat of prosecution. None of that prevents the officers from ultimately performing their core duties, but it is absurd and would functionally destroy the Supremacy Clause.

This is why, absent an injunction of this law, other states are more likely to join the Commonwealth in its attempt to micromanage a federal function. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008) (allowing a State to act unconstitutionally "would allow other States to do the same"). Indeed, multiple states have introduced similar legislation, and without Court intervention, this unconstitutional practice will proliferate. *See* https://statecourtreport.org/our-work/analysis-opinion/can-states-ban-federal-officers-wearing-masks ("In addition to California, lawmakers in at least 30 other states have introduced, considered, voted on, or even passed similar legislation. For example, New Jersey, Oregon, and Washington, all passed mask bans earlier this year. Los Angeles County in California and Saint Paul, Minnesota have passed local bans.") (last visited June 26, 2026); https://spectrumlocalnews.com/nys/central-ny/politics/2026/05/29/hochul-signs-measures-to-limit-ice-cooperation (describing New York state mask ban, noting that "[t]he governor said she

hopes the package is a model for other states.") (last visited June 26, 2026). And under the Commonwealth's theory, there is nothing stopping every state from micromanaging the "manner" of how federal officers operate. That is not the law and this blatantly unconstitutional statute must be enjoined.

### B. The Mask Ban Improperly Discriminates Against the Federal Government.

The Commonwealth contends that the Mask Ban does not discriminate against the Federal Government because "[b]y its plain terms, the statute regulates all officers—federal, state, and local—whenever they act under color of law." Comm. Resp. at 14. A closer reading of the statute refutes this contention. The Mask Ban as it pertains to facial coverings does contain some generally applicable exceptions that appear to extend to federal law enforcement officers. *See* Va. Code § 19.2-83.6:1(C)(1)-(7). However, the critical exception for officers "assigned to an undercover, drug, gang, or surveillance unit" does not apply to federal law enforcement officers based on the plain text of the statute, as it requires that "the *law-enforcement agency* overseeing such unit or other responsible law-enforcement agency" deem the protection of the officer's identity necessary. *See id.* § (D) (emphasis added). "Law-enforcement agency" is defined in the Virginia Code as "any agency or department responsible for the prevention and detection of crime and the enforcement of the penal, traffic, or highway laws of the Commonwealth[,]" thereby seemingly excluding federal law enforcement. *See id.* § 19.2-83.6:1(A). This definition stands in contrast to the definition of "law enforcement officer," which explicitly includes "a federal law-enforcement agency." *Id.* § 19.2-83.6:1(A). Thus, normal tools of statutory interpretation, such as meaningful variation, indicate that the exception for law enforcement agencies are not provided to federal officers. *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022) ("[W]here [a] document has used one term in one place, and a materially different term in another, the presumption is that the

10

different term denotes a different idea".) (citing A. Scalia & B. Garner, Reading Law 170 (2012)). Otherwise, there would be no reason for the Commonwealth to have that separation and provide some exceptions to "law enforcement officer[s]" and others to "law enforcement agenc[ies]." *Compare* Va. Code § 19.2-83.6:1(C)(5) *with id.* § (C)(8). The Commonwealth's only response is to disregard this variation and claim the entire statute is aimed at all law enforcement. The Commonwealth has no explanation for this difference, which renders the definition of "law enforcement agency" superfluous.

Enabling state and local law enforcement to shield their identities when conducting undercover work while declining to extend that exception to federal law enforcement is a textbook example of discrimination where the Commonwealth "treats someone else better than" the federal government and "singles out the Federal Government for unfavorable treatment." *United States v. Washington*, 596 U.S. 832, 840 (2022).

## II.    An Injunction Against Defendant Descano would be Proper

Defendant Descano separately argues that an injunction against him is improper. He is wrong. ECF 21, Descano Resp. at 2-3. First, Commonwealth Attorneys are authorized to enforce the challenged law. *See* Va. Code § 15.2-1627(B). Defendant Descano does not dispute that he has such authority. Indeed, he does not dispute that the United States has standing to enjoin him at all. Second, while Defendant Descano claims he has been improperly singled out, he has singled himself out by publicly joining a group called the Fight Against Federal Overreach (FAFO) coalition which was formed "to assist in prosecuting federal law enforcement officers who violate state laws." *See* PI Memo. at 12. Indeed, he still refuses to disavow enforcement. Descano Resp. at 2. Descano cites no law that the United States must sue every possible defendant to seek injunctive relief. Nor would that be feasible given the number of Commonwealth Attorneys. A

plaintiff "need not show that a favorable decision will relieve his every injury," *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982), just that the "risk [of the alleged harm] would be reduced to some extent if [the plaintiffs] received the relief they seek," *Massachusetts v. E.P.A.*, 549 U.S. 497, 526 (2007). So the United States chose to sue the Commonwealth Attorney for Fairfax County, Virginia, the largest county in the Commonwealth by population, which is home to more than one million people, about 10% of which are illegal aliens.[2] A significant proportion of federal enforcement occurs there, so an injunction in Fairfax would have a significant impact.

Third, to the extent Defendant Descano argues that he is a redundant party because an injunction against the Commonwealth would bind him as well, there is no requirement to dismiss a public official in an official capacity suit as redundant. *Owens v. District of Columbia*, 631 F. Supp. 2d 48, 54 (D.D.C. 2009). Further, to the extent Descano agrees he would be bound by any injunction of the law against the Commonwealth, he cannot also argue that such an injunction is intrusive and violates principles of comity.

### III.    The United States Faces Irreparable Harm Absent Preliminary Relief

At the threshold, because the United States has demonstrated a likelihood of success on its claim that the Mask Ban is invalid under the Supremacy Clause, there exists irreparable harm. *See Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (citing *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)). A violation of the Constitution necessarily results in irreparable injury to the United States. *See* PI Memo. at 25; *California*, 173 F.4th at 1069. The Commonwealth does not dispute this proposition.

The Mask Ban further harms the Federal Government by stripping the discretion to use facial coverings and identification from federal officers. They are faced with two choices: comply

---

[2] https://www.migrationpolicy.org/data/unauthorized-immigrant-population/county/51059 (last visited June 26, 2026).

with Virginia law and place themselves and operations at risk while executing federal duties, or face criminal prosecution. *See, e.g.*, Weiss Decl. ¶ 47; Allen Decl. ¶ 18, 20. The Commonwealth contends that the harms cited by the federal agencies in the declarations are "conclusory, speculative, and untested." Comm. Resp. at 16. But this statement ignores the real increase in harm, doxxing, and threats received by law enforcement which have been documented with specificity. *See, e.g.*, Hargis Decl. ¶ 6, 9a-m, 10-11 (documenting statistics and threats against federal officers); Weiss Decl. ¶ 35-40 (documenting threats against officers); Allen Decl. ¶ 16 (documenting threat). Indeed, the declarations provide concrete examples of federal officers being identified and targeted by civilians and criminal actors. Hargis Decl. ¶ 9 a-m. For example, a United States Border Patrol agent and his family received threatening messages, including "I'm going to kill you when I see you," and "Your family and everyone is gonna be targeted ! Be ready [*sic*]." *Id.* ¶ 9b. Another officer received a message calling him a "dead man." *Id.* ¶ 9j. The Commonwealth takes issue with the examples, alleging that those incidents did not happen in Virginia and are not related to the Mask Ban. Comm. Resp. at 17. The location of the incidents is irrelevant. The point is that federal officers are facing an increased risk of doxxing, assaults, and disrupted operations nationwide. Hargis Decl. ¶ 6, 9 a-m, 10-11; Weiss Decl. ¶ 35-40; Allen Decl. ¶ 16. One way to mitigate that risk is to wear masks and remove identifiers when the circumstances call for it. Kaufmann Decl. ¶ 16; Allen Decl. ¶ 19. Officers need discretion to make that fact specific judgment. Yet the Commonwealth wants to eliminate that discretion under the threat of *criminal* prosecution. The Hobsons' choice of not taking precautionary measures given the threats or else face prosecution chills officers in the performance of their duties. All of that is an imminent and irreparable harm caused by the Mask Ban.

13

The Commonwealth claims that these are not examples of direct harms from the law. That is because the law does not go into effect until July 1. The Commonwealth is speaking out of both sides of its mouth on irreparable harm, claiming the United States waited too long to file suit but also the law has not directly harmed them yet, so it is premature. But the United States need not wait until its officers are prosecuted to seek a preliminary injunction. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute").

On the flip side, both the Commonwealth and Defendant Descano contend that the United States' purported delay in filing its lawsuit and motion for injunctive relief counsel against the existence of irreparable harm. Comm. Resp. at 18; Descano Resp. at 4. This argument has little force.

Bizarrely, the Commonwealth notes that the General Assembly passed the Mask Ban and sent it to Governor Spanberger over two months ago. Comm. Resp. at 18. But Governor Spanberger *returned* the bill to the legislature with recommendations. *See* ECF 15-1 at 5; ECF 15-2 at 5. The United States thus had no sense on when or if the law would be passed. As a result, it made little sense to spin up multiple agencies to prepare to challenge a law that might never be passed. Governor Spanberger later signed the returned bill into law on May 20, upon which time the United States acted swiftly. The Commonwealth only gave the United States until July 1 to act, less than a month and a half. Yet the United States still filed in under a month. That is hardly undue delay.

Indeed, that is rather efficient given the multiple steps required for the United States to secure the authorization to proceed with a lawsuit and to obtain the information necessary to support its claims. Moreover, the United States wished to bring one comprehensive challenge to

both the Mask Ban and Virginia Code Section 15.2-1726.1, the 287(g) Restriction. All of these things take time. While the United States apologizes to the Court for not having filed this lawsuit and motion sooner, "it is reasonable for a litigant to get its ducks in a row before coming to court, and a litigant should not be punished for giving itself time to investigate and prepare its case, so long as it does so expeditiously." *Fleet Feet, Inc. v. Nike Inc.*, 419 F. Supp. 3d 919, 947 (M.D.N.C. 2019), *appeal dismissed and remanded on other grounds*, 986 F.3d 458 (4th Cir. 2021).

Moreover, while inordinate delay can weigh against irreparable harm, it is rarely dispositive. *See Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*, 23 F. App'x 134, 139 (4th Cir. 2001). This is especially true when the purported harm absent an injunction is severe and well documented. *See id.* And doubly so where constitutional violations are at issue. *See Hardy v. Fischer*, 701 F. Supp. 2d 614, 619 (S.D.N.Y. 2010). The United States' short delay of less than a month from signing to file suit, and another week thereafter to file the preliminary injunction motion (which requires supporting declarations from multiple stakeholders), does not defeat its claim of irreparable harm. *See NetChoice v. Jones*, 822 F. Supp. 3d 656, 677-78 (E.D. Va. 2026) (delay of six months to file suit and four days thereafter to file preliminary injunction motion did not diminish claim of irreparable harm when both were filed prior to effective date of law). And the delay does not undercut the United States' claim of immediate and irreparable harm where the law has not yet gone into effect. *See id.* at 678 (finding no harm of prejudice to the defendant where the plaintiff filed suit before the law went into effect). Indeed, while it might make sense that a delay undermines a claim of irreparable harm when the law is already in effect, that has no weight here where the United States sued weeks before the law goes into effect.

The Commonwealth and Defendant Descano cite to *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75 (4th Cir. 1989) in support of their delay argument. Comm. Resp. at 15-16,

15

18; Descano Resp. at 4. But the plaintiff in *Hodel* waited *nine* months after the alleged harm began to initiate the action. 872 F.2d at 79. Here, a short, reasonable delay of less than a month to initiate the action and file for preliminary injunctive relief before the law even takes effect does not diminish the United States' claims.

Moreover, any claim of prejudice to the Commonwealth or false accusations of gamesmanship is refuted by the United States' willingness to bifurcate the issues raised in the preliminary injunction motion in order to enable them sufficient time to brief the issues. It is further refuted by the United States' willingness to agree to a less compressed briefing schedule if the Commonwealth maintained the status quo during the pendency of this case, as this Court suggested. Indeed, states in similar cases such as California agreed to such an arrangement. The Commonwealth declined, demonstrating its desire to quickly enforce its new law against federal officers. If anything, this demonstrates the immediate threat of irreparable harm. If the Commonwealth wanted more time, it should not have passed a blatantly unconstitutional law with less than two months before its effective date.

**IV.    The Balance of Equities and the Public Interest Weigh in the United States' Favor**

It is well settled that the balance of the equities favors the United States' because "a state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013) (internal citation and quotation marks omitted); *see also California*, 173 F.4th at 1069 ("[a] plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in [its] favor.") (citation omitted). Moreover, the Commonwealth has

16

no legitimate interest in interfering with the enforcement of federal law or putting federal officers at risk.

The Commonwealth offers various policy justifications for the challenged laws, but none persuade. For example, the Commonwealth observes that criminals impersonate law enforcement officers, creating confusion and distrust of law enforcement. Comm. Resp. at 19. This conduct is already illegal. The solution to this problem is prosecuting such impersonators, not criminalizing legitimate federal activities. Indeed, federal law enforcement often uses masks due to the risk to officers. *See* Weiss Decl. ¶ 41; Kaufmann Decl. ¶ 12, 15; Hargis Decl. ¶ 13. And requiring personal identifiers and prohibiting masks will not deter impersonators but instead will place federal officers at risk. Moreover, the law does not fix this problem, as officers usually wear tags identifying them as police, yet this law goes further requiring individual identifiers. Moreover, impersonators can use counterfeit identification badges. Stripping the Federal Government of its discretion in its law enforcement mission simply does not serve the public interest.

The Commonwealth also claims that the Mask Ban will promote public safety, trust, accountability, and transparency in law enforcement. Comm. Opp at 20. Those policy arguments are irrelevant and disingenuous because the Mask Ban creates safety threats to federal officers and their families, and also to the public at large by interfering with the enforcement of federal laws against dangerous criminals. *See* PI Memo. at 25-27 (collecting evidence of such harms). There is also no public interest in placing federal, state, and local law enforcement at odds with one another. Enforcement of this law could lead to dangerous and unnecessary confrontations between officers. The Commonwealth's preferred policy justifications cannot salvage its facially unconstitutional law.

17

**CONCLUSION**

For the foregoing reasons and for those explained in the United States' Memorandum in Support of its Preliminary Injunction, the United States respectfully requests that this Court enjoin Defendants, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with any of the Defendants, from enforcing the Mask Ban against the Federal Government.

DATED: June 26, 2026

TODD BLANCHE
Acting Attorney General

/s/ Gerard Mene
GERARD MENE
Assistant United States Attorney
Eastern District of Virginia
Counsel for the United States
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Gerard.Mene@usdoj.gov

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TIBERIUS DAVIS
CHARLES E.T. ROBERTS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

ALEXANDRA MCTAGUE SCHULTE
Senior Litigation Counsel

By: s/ Alessandra Faso
ALESSANDRA FASO
Senior Litigation Counsel
U.S. Department of Justice Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
202-451-7728
Alessandra.faso@usdoj.gov

18