IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

Plaintiff,

v.                                      Civil Action No. 3:26cv545

COMMONWEALTH OF VIRGINIA,
et al.,

Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on the DEFENDANTS' MOTION TO STAY ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND ENJOINING ATTORNEY GENERAL JONES FROM ENFORCING SB 352 PENDING APPEAL (ECF No. 35) (the "STAY MOTION"), the MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY ORDER GRANTING THE UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION AND ENJOINING ATTORNEY GENERAL JAY JONES FROM ENFORCING SB 352 PENDING APPEAL (ECF No. 39), the PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY ORDER GRANTING THE UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION AND ENJOINING ATTORNEY GENERAL JAY JONES FROM ENFORCING SB352 PENDING APPEAL (ECF No. 61), and DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A STAY PENDING APPEAL (ECF No. 64). For the reasons set forth below, the STAY MOTION will be denied.

## BACKGROUND

The full background of this case is set forth in detail in

the MEMORANDUM OPINION (ECF No. 34), which is incorporated here by reference. So, it is necessary only briefly to summarize the context here. On May 20, 2026, Governor Abigail Spanberger signed the Mask/Identity Law, Va. Code § 19.2-83.6:2.[1] On June 11, 2026, the United States filed the COMPLAINT, which alleges six counts against the Commonwealth of Virginia related to its passage of the Mask/Identity Law and another statute, Va. Code § 15.2-1726.1 (the "287(g) Law"). See ECF No. 1. Count I alleges that the Mask/Identity Law is an unlawful regulation of the federal government and violates the supremacy clause. See id. at 41-42.[2] On June 17, 2026, the United States filed the PI MOTION (ECF No. 8), which seeks to stop enforcement of the Mask/Identity Law until

---

[1] In the PRELIMINARY INJUNCTION ORDER (ECF No. 30) and MEMORANDUM OPINION (ECF No. 34), the Court referred to the Mask/Identity Law as Va. Code § 19.2-83.6:1 because the parties referred to it as such, and because the Virginia Assembly enacted it as such. It was later brought to the Court's attention that the Mask/Identity Law was renumbered to Va. Code § 19.2-83.6:2. A Joint Motion to allow the Court to correct its ORDER and MEMORANDUM OPINION is pending in the Fourth Circuit. Because the correct current version of the Mask/Identity Law is Va. Code § 19.2-83.6:2, this Memorandum Opinion shall refer to it as such.

[2] COUNT II alleges that the Mask/Identity Law discriminates against the Federal Government, COUNT III alleges that the 287(g) Law violates the Contract Clause, COUNT IV alleges that the 287(g) Law is conflict preempted, COUNT V alleges that the 287(g) Ban violates the intergovernmental immunity doctrine, and COUNT VI alleges that the 287(g) Law discriminates against the Federal Government. See ECF No. 1, 42-46. The issues presented in COUNTS III-VI are under consideration separately from the Mask/Identity Ban because, unlike that ban, the 287(g) Law did not take full effect on July 1, 2026.

the Court can rule on a permanent injunction. The PI MOTION is based on the claim in COUNT I. Because the Mask/Identity Law was to take effect on July 1, 2026, the proceedings on the PI MOTION were expedited. On June 30, 2026, the Court issued an ORDER OF PRELIMINARY INJUNCTION enjoining the Mask/Identity Law. ECF No. 30. The corresponding MEMORANDUM OPINION followed on July 2, 2026. ECF No. 34.

### LEGAL STANDARD

Whether the Court should grant a stay pending appeal depends on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). The inquiry is similar, though not the same, as the standard for a preliminary injunction. Id. Factors (1) and (2) are the most important. Id.

Where, as here, the injunction granted at the behest of the federal government runs to a state law, fundamental principles of federalism come into focus. That aspect of the analysis manifests itself in one way or another in the analysis of each of the Nken v. Holder factors.

Lastly, when making all decisions, but especially when exercising the court's extraordinary power to grant injunctive relief, and, likewise, in the exercise of the authority to stay an injunction pending appeal, it is wise for judges to be mindful of Judge Learned Hand's advice: "think that ye might be mistaken."[3] As was so in the ORDER OF PRELIMINARY INJUNCTION and the supporting MEMORANDUM OPINION (ECF Nos. 30 and 34), the analyses of the STAY MOTION is made with Judge Hand's admonition in mind.

As the United States correctly observes, the stay of an order intrudes into the usual "processes of administration and judicial review." Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958). Consequently, a stay "is not a matter of right, even if irreparable injury might otherwise result to the appellant,"[4] because "[a] stay is considered 'extraordinary relief,' for which the moving party bears a heavy burden" to secure that relief.[5]

---

[3] See, e.g., Jak Allen, Political Judging and Judicial Restraint: The Case of Learned and Augustus Hand, 60 Am. J. Legal Hist. 169, 179 (2020). Judge Hand invoked the 1650 letter from Oliver Cromwell to the General Assembly of the Kirk of Scotland before the battle of Dunbar: "I beseech ye, in the bowels of Christ, think it possible that you may be mistaken." Letter from Oliver Cromwell to the General Assembly of the Church of Scotland (August 3, 1650) http://www.olivercromwell.org/Letters_and_speeches/letters/Lette r_129.pdf [https://perma.cc/LB3K-E44W].

[4] Nken v. Holder, 556 U.S. at 427 (quoting Virginian Ry. Co. v. United States, 272 U.S. 658, 672 (1926)).

[5] Personhuballah v. Alcorn, 155 F. Supp. 3d 552, 558 (E.D. Va. 2016) (quoting Larios v. Cox, 305 F. Supp. 2d 1335, 1336 (N.D. Ga.

**ANALYSIS**

(1)  Whether Virginia has made a strong showing that it is likely to succeed on the merits

Virginia argues it is "at least reasonably likely to succeed on the merits." ECF No. 39, 9. In support of that argument, it largely recycles the arguments on the issue that were made in the PI MOTION briefing and that were rejected in its MEMORANDUM OPINION. ECF No. 34.

First, Virginia argues that regulating law enforcement officers and protecting public safety are within the Commonwealth's core police powers. While it is true that regulating state officers is within the state's core police powers, that authority does not extend to the state's regulation of the federal government. The state cannot regulate the federal government at all. See, e.g., United States v. Washington, 596 U.S. 832, 838 (2022). Indeed, "[t]he United States may perform its functions without conforming to the police regulations of a state." Arizona v. California, 283 U.S. 423, 451 (1931).

Recognizing these fundamental principles, Virginia then argues that the Mask/Identity Law does not impose additional requirements on federal law enforcement officers and is therefore not a regulation of the federal government. ECF No. 39, 13. That

_____

2004) and Winston-Salem/Forsyth Cnty. Bd. of Educ. v. Scott, 404 U.S. 1221, 1231 (1971)).

argument borders on the frivolous because the text of the law actually makes it applicable to federal law enforcement officers. Moreover, the argument ignores the fact that Virginia's stated reasons for enacting the Mask/Identity Law was the conduct of ICE officials in enforcing federal immigration law elsewhere. Indeed, Virginia's public statements explaining the perceived need are laden with citations to ICE conduct in other states. Likewise, in explaining the need for the law, Virginia's PI MOTION briefs point to the conduct of ICE officers and the perceived (and actual) errors that ICE has made when enforcing federal immigration laws elsewhere. See, e.g., ECF No. 22, 5-6. Also, to explain why the law was enacted, Virginia offered a supporting affidavit that addresses solely ICE policies and practices. ECF No. 22-1.

It is also telling that, in Virginia's justifying statements, in its PI briefs, and in the STAY MOTION papers, there is not one mention of the conduct of any state or local law enforcement office that is thought to have necessitated the Mask/Identity Law. That is important because it clearly tells that the purpose of the law is to regulate the conduct of federal law enforcement officers in the enforcement of federal immigration law. So, the notion that the Mask/Identity Law does not regulate those officials is just not correct. And, that undisputed fact puts an end to Virginia's other arguments. Nonetheless, those arguments will be addressed.

The unintended admission that the Mask/Identity Law regulates federal officials is sought to be ameliorated by the argument that the law only incidentally affects federal law enforcement. ECF No. 39, 12. So, says Virginia, who is arrested, how investigations are conducted, and what federal policies are followed are unaffected by the Mask/Identity Law. Id. at 13-14. True, the Mask/Identity Law does not regulate who is arrested. However, the way in which federal law enforcement officers may carry out their other duties is affected by the Mask/Identity Law because it controls what ICE officials must wear while conducting their law enforcement duties.

And, contrary to Virginia's view, the Mask/Identity Law is far from the kind of generally applicable regulation permitted by Johnson v. Maryland, 254 U.S. 51 (1920). It is not generally applicable at all. Only federal law enforcement officers are actually affected by the Mask/Identity Law. So that law is very unlike a law about how to turn the corner while driving on public streets. Johnson, 254 U.S. at 56.

Virginia next argues that the conclusion that the law imposes additional requirements "presupposes the existence of a federal baseline governing mask use or pubic-facing identification for ICE officers" and that no such federal requirement exists. ECF No. 39, 13. That misses the mark. The fact that the federal government does not have any requirements relating to masks does not mean

that the Mask/Identity Law does not add "additional requirements" with which federal officers must comply or face criminal prosecutions. Moreover, the federal government deems it sufficient that mask-wearing be left to officer discretion, depending on the specific situation when federal law is being enforced. Virginia adds many requirements to the discretion that the federal government has decided is necessary and appropriate for its officers to properly fulfill their obligations when enforcing federal law. That is impermissible regulation.[6]

Next, Virginia contends that the Court erroneously relied on United States v. California, 173 F.4th 1060 (9th Cir. 2026) because that decision did not specifically speak to California's mask ban. However, in California, the Ninth Circuit considered California's identification requirement, and the reasoning of the Ninth Circuit addressed the impermissibility of a state regulation that is quite similar in effect to the Mask/Identity Law here at issue. Id. at 1064. Virginia also points out that United States v. California and United States v. City of Philadelphia, Civil No. 26-4208, 2026 WL 1906075 (E.D. Pa. July 2, 2026) are not binding authority. That is true, but it does not mean that the reasoning is not persuasive.

---

[6] And, as the United States points out, a state law that regulates the federal government even in a manner consistent with federal law is nonetheless impermissible. United States v. City of Arcata, 629 F.3d 986, 991-92 (9th Cir. 2010).

The MEMORANDUM OPINION (ECF No. 34) outlines the reasons why it found United States v. California persuasive. ECF No. 34, 25-26.

Just this week, in United States v. New York et al., No. 53 1:26-cv-1360 (N.D.N.Y. Aug. 3, 2026), the United States District Court for the Northern District of New York struck New York's masking and identification law as unconstitutional for the same reasons that necessitated that result in this case. And, there, as here, Virginia (like New York) "offered no case where similar laws were upheld in the face of a direct regulation challenge." Id. at 28. The decision there underscores the view that here Virginia is not likely to succeed on appeal.

In sum, Virginia makes neither new nor compelling arguments that cause the Court to conclude that it was mistaken in finding that the United States is likely to succeed on the merits. ECF No. 34. Nor have Virginia's arguments in support of the STAY MOTION made a strong showing that it is likely to succeed on appeal.

Indeed, the STAY MOTION is actually a motion for reconsideration. Judged by the applicable standard, it fails on that score as well. The Fourth Circuit has set forth three avenues through which courts may re-consider interlocutory rulings under Federal Rule of Civil Procedure 54(b), which provides the framework for motions to alter interlocutory orders in civil matters. The three avenues are: "(1) a subsequent trial producing substantially

difference evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." U.S. Tobacco Coop. Inc. v. Big South Wholesale of Virginia, LLC, 899 F.3d 236, 257 (4th Cir. 2018) (internal quotation marks omitted); Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017); United States v. Benjamin, Criminal Action No. 3:21-525, 2023 WL 3325268, at *2 (D.S.C. May 9, 2023) (applying this standard to a motion for reconsideration made in a criminal case). The STAY MOTION meets none of those requisites.

**(2) Virginia's Asserted Irreparable Harm**

First, Virginia argues that, if it succeeds on appeal, it would, absent a stay, suffer a sovereign injury. ECF No. 39, 15; ECF No. 64, 14. If it were at all likely to succeed on the merits, that may be the case. However, for the reasons expressed above and in the MEMORANDUM OPINION (ECF No. 34), Virginia is not likely to succeed on the merits because the Mask/Identity Law is unconstitutional. There is no harm to Virginia's sovereignty in enjoining enforcement of a rather clearly unconstitutional law pending appeal.

Second, Virginia argues that there will be a heightened risk of escalation in interactions between law enforcement and Virginians and criminals may take advantage of the mask-wearing and lack of ID to impersonate police. ECF No. 39, 15. It is true

10

that there is some evidence that there has been an increase in impersonation crimes. Anagilmara Vilchez & Ronny Rojas, <u>Fake ICE Agents Terrorize Immigrants Amid Trump's Crackdown</u>, NBC News (May 25,2026, 6:30AM EST), https://www.nbcnews.com/news/us-news/ice-impersonators-immigrantsraids-violence-trump-administration-rcna265653?cid=eml_npd_nws_mrd_05252026 [https://perma.cc/S5G3-69PN]. But, the appropriate entity to weigh the risk of impersonation crimes with the risk of harm to federal officers is the United States, not Virginia. And, in any event, impersonation is unlawful and can be prosecuted by Virginia and the federal government.

Third, Virginia argues that it was not given enough time to appropriately develop an evidentiary record. ECF No. 39, 16. It is true that the timeline between the filing of the Complaint and the PI MOTION, and the Court's decision was compressed. But, the argument lacks merit for several reasons.

To begin, Virginia started the process that led to the enactment and signing of the Mask/Law Identity Law months ago. And, surely, the legislature and the Governor took stock of the risk of enacting a state law that regulated federal law enforcement. And, it is difficult to believe that the legislature, the Governor, and the Attorney-General were not aware of litigation elsewhere over the enactment of similar laws and the federalism

11

implications therein involved.[7] Nor is the Court prepared to accept the implied argument that no one in Virginia's government considered the legality of the law being enacted and signed. That defies reality. Worse, it would be to cast aspersions on the legitimacy of Virginia law-making process, something that the Court is unwilling to do.

More likely, the Mask/Identity Law was enacted with an understanding of the legal issues and the risks of enacting it. That Virginia erred in its assessment is no basis on which to conclude that Virginia's legal team was caught unaware by the filing of this action or the PI MOTION. Of course, expedited proceedings are the norm when a preliminary injunction is sought. And, it is true that lawyers for the parties in those cases must work long and hard to be ready for the resolution of the request for injunction.

In this case, as is the usual practice here, the parties were offered the opportunity to proceed under Fed. R. Civ. P. 65 and consolidate the PI MOTION and the merits with an expedited schedule for discovery (if needed), briefing, hearing, and decision. Of course, to avoid mooting the injunction request that procedure

---

[7] If these state law-making and law-enforcing officials had turned a blind eye to these subjects, they would have been reckless. That is particularly so given the fact that California's similar law already was under attack. The Court is not prepared to believe that the Commonwealth acted unaware of the risks involved.

necessitates the preservation of the status quo while the expedited proceedings take place.

Virginia was provided the opportunity to maintain the status quo while the briefing was ongoing, but it declined to do so. Virginia argues the Court offered no meaningful choice. While the short timeline offered Virginia a choice between two undesirable options, it did have the choice to maintain the status quo for a brief period so that it could develop the record further. And, clearly the option to delay enforcement is a meaningful one because California agreed to do so to allow the briefing to proceed at a more standard rate. United States v. California, 819 F. Supp. 3d 1109, 1117 (C.D. Cal. 2026). And, in the time since the Court's MEMORANDUM OPINION, Virginia has not submitted any evidence to augment the factual record in any way that would alter the decision in the MEMORANDUM OPINION or the ORDER OF PRELIMINARY INJUNCTION. That is substantial evidence that there is no prejudice from the expedited proceedings.

**(3) Injury to the United States and Public Interest**

The final two factors merge when the Government is the opposing party. Nken v. Holder, 556 U.S. 418, 435 (2009). Virginia argues that the public interest favors a stay of the Court's ORDER during the appeal because it will allow Virginia to exercise its core police powers, protect citizens from impersonation, and

13

promote accountability. ECF No. 39, 19-20. Virginia is incorrect that regulation of federal officers is among its police powers. It is not. And Virginia cites no authority to the contrary.

And, there is no public interest in enforcing an unconstitutional law. United States v. California, 173 F.4th at 1069; Leaders of a Beautiful Struggle v. Baltimore Police Dept., 2 F.4th 330, 346 (4th Cir. 2021). If it is the case that the mask-wearing policy harms the public interest, the federal government is the appropriate entity in our federal system to address that issue. The public interest supports enjoining an unconstitutional law. The Court has found that the United States is likely to succeed on the merits, so the public interest weighs against granting a stay.

## CONCLUSION

Virginia has not shown that it has a strong possibility of success on appeal, that it will be irreparably harmed, or that the balance of equities and public interest weigh in its favor. For those reasons, the STAY MOTION (ECF No. 35) will be denied.

It is so ORDERED.

/s/ _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 5, 2026

14