**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>   v.<br><br>THE COMMONWEALTH OF VIRGINIA,<br>*et al.*,<br><br>       Defendants. | No. 3:26-cv-00545-REP<br><br>**PLAINTIFF'S STATEMENT OF POSITION IN RESPONSE TO THE COURT'S ORDER (ECF 79)** |

**INTRODUCTION**

The United States submits this statement of position in response to the Court's request for an explanation as to "the argument that states declining to enter 287(g) agreements constitutes obstruction of federal law." ECF 79.

As an initial matter, the United States does not take the position that any declination to enter a 287(g) agreement is an obstruction of federal law because, as explained below, such agreements were made voluntary by statute. *See* 8 U.S.C. § 1357(g)(9). Instead, the United States challenged Virginia's 287(g) law, codified at Virginia Code § 15.2-1726.1 as unconstitutional under the Supremacy Clause[1] because it: is preempted by federal law (Count IV), regulates the Federal Government (Count V), and discriminates against the Federal Government (Count VI). The United States argued that it is likely to succeed on the merits of each of Counts IV, V, and VI in its Preliminary Injunction briefing. *See generally* ECF 9 (Memorandum in support of Preliminary Injunction Motion) and ECF 56 (Reply in support of § 287(g) portion of Preliminary

---

[1] The United States also challenged the law under the Contract Clause (Count III of the Complaint). *See* ECF 9, ECF 56.

1

Injunction Motion). Thus, the United States takes the position that a law imposing an outright ban on such cooperative agreements (or a functional ban, as in the Virginia law) is an affront to our dual sovereign system, is directly contrary to Congressional intent as expressed by the text of Section 1357(g), and is invalid under the Supremacy Clause.

The Second Circuit concluded that cooperation is a necessary aspect of our system in *City of New York*, holding that "states do not retain under the Tenth Amendment an untrammeled right to forbid all voluntary cooperation by state or local officials with particular federal programs." *City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999). The Third Circuit held in *CoreCivic* that any Supremacy Clause analysis must include whether the law obstructs a federal function. *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 322-23 (3d Cir. 2025) (collecting cases). And the conflict preemption analysis asks whether state law, as authoritatively construed and applied, "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

The question then, is not whether individual localities are free to decline to participate in the 287(g) program, because they are, but whether the Virginia legislature can enact a state-wide law that bans all such cooperation in a federal program created by Congress. The answer to that question, under the Supremacy Clause, is no.

**ARGUMENT**

I.       **Congress's 287(g) Agreement Scheme**

The United States' authority to enter 287(g) agreements with localities is derived from 8 U.S.C. § 1357(g), which states in relevant part:

2

the Attorney General [Secretary of Homeland Security][2] may enter into a written agreement with a State, or any political subdivision of a State, pursuant to which an officer or employee of the State or subdivision, who is determined by the Attorney General to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States (including the transportation of such aliens across State lines to detention centers), may carry out such function at the expense of the State or political subdivision and to the extent consistent with State and local law.

8 U.S.C. § 1357(g). States and their subdivisions are not required to enter into such contracts, *id.* § 1357(g)(9), and the United States does not argue otherwise. The statute nonetheless expresses a clear intent and preference by Congress for the Federal Government to have the ability and means to cooperate with states and localities through 287(g) agreements, by making them available and delineating the contours of the program. *See id.* § 1357(g)(1)-(9).

There is, however, a stark difference between individual jurisdictions declining to enter such agreements and a law on the books that seeks to regulate the terms of all such agreements within the state to the point of effectively banning them. There is a difference between choosing not to participate in a federal program versus banning all voluntary cooperation because the state disagrees with Congress's express policy choice. These differences, as explained below, render Virginia's law unconstitutional and invalid even though individual localities within the state are free to decline to enter 287(g) agreements or to terminate them pursuant to the contractual terms.

**II.    Virginia's law is Preempted by 1357(g) Because it Obstructs the Scheme Created by Congress**

Count IV of the Complaint alleges that Virginia's 287(g) law obstructs Congress's scheme and is preempted by Section 1357(g) of the Immigration and Nationality Act. As explained in the

---

[2] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" are now read to mean the Secretary of Homeland Security. *See Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

United States' prior briefing, Congress established a scheme for voluntary cooperation between federal immigration enforcement on the one hand, and state or local law enforcement agencies, on the other. ECF 9 at 9, 23. Such cooperation is necessary for our dual sovereign system. *City of New York*, 179 F. 3d at 35.

Congress's scheme also anticipates that state participation in immigration enforcement is permissible only under federal control. *See* 8 U.S.C. § 1357(g)(1)-(5); *Arizona v. United States,* 567 U.S. 387, 408-10 (2012) (explaining that Section 1357(g) permits state officers to perform federal immigration functions only under a written agreement and federal training, supervision, and direction). Further, Section 1357(g) sets forth certain details of the scheme, including that the state or local officers receive adequate training, 8 U.S.C. § 1357(g)(2), are subject to the direction and supervision of the Attorney General when performing functions under the agreement, *id.*(g)(3), and may use federal property or facilities, as provided in a written agreement, *id.* (g)(4). Section 1357 also specifies that the written agreement must set forth the specific powers and duties to be exercised or performed by the state or local officer, the duration of the officer's authority, and the officer's supervisor, *id.* at (g)(5), as well as the division of liability, *id.* at (g)(7), (g)(8).

Virginia's law at issue is described in the United States' opening brief (ECF 9 at 7-9; *see also id* at 16-17) and that discussion is incorporated herein by reference. To summarize, Virginia's law dictates that all future 287(g) cooperation agreements between entities in Virginia and the Department of Homeland Security ("DHS") must contain 12 provisions that restrict how DHS may operate pursuant to such agreements and generally within the State. *See* Va. Code § 15.2-1726.1(c)(1)-(12). The law is an anti-immigration-enforcement directive that imposes changes to DHS's policies and procedures in Virginia. Provisions of 15.2-176.1(c) include, for example, a requirement to notify the local law enforcement agency of law enforcement operations seven days

in advance (c)(1), a restriction on the use of electronic surveillance technology (c)(9), an identification requirement (c)(3), and restrictions on information requests (c)(6), (c)(7). The law by its plain terms pertains to DHS and seeks to restrict both criminal and civil enforcement mechanisms by DHS within the state.

As explained in the prior briefing (ECF 9 at 16-28, 20-22; ECF 56 at 16-17), the Virginia law is preempted because it obstructs this scheme in multiple ways. First, it bans all such agreements in Virginia, thus obstructing Congress's scheme in § 1357(g). *See* ECF 9 at 20-22. Second, it conflicts with the express terms of § 1357(g). For example, it seeks to override the liability provisions specified by Congress. *Compare* 1357(g)(7) & (g)(8) *with* 15.2-1726.1(c)(5), (c)(12). And it requires adherence to Virginia law when section 1357(g) requires adherence to federal law. *Compare* 15.2-1726.1(c)(2) *with* 1357(g)(2). Third, it seeks to restrict how DHS performs its immigration enforcement duties by, *e.g.*, restricting the use of administrative process. *Compare* 15.2-1726.1(c)(7) *with* 8 U.S.C. § 1225(d)(4) (administrative subpoenas), § 1226(a) (administrative warrants).

The fact that a locality could independently decide *not* to participate because, for example, it lacks the resources to do so or has higher priority matters requiring attention, does not affect the analysis. Conflict preemption asks whether state law, as authoritatively construed and applied, "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Consistent with the conflict preemption analysis, it is important that Virginia passed a *law* that restricts and by Virginia's own admission bans, cooperation from any and all state and local law enforcement within Virginia until the law is invalidated or repealed. It is not a mere declination by a locality not to participate. It is a statewide

law that places a ban on such agreements with DHS, even though Congress intended that such agreements could be used to enhance immigration enforcement within the states.

As this Court has already recognized with respect to the Mask and ID law, the backdrop of Virginia's laws is a policy disagreement with federal immigration enforcement. *See generally* ECF 34. And, as the Second Circuit in *City of New York* observed, if a state could enact laws to obstruct federal operations or cooperation every time it disagreed with the policy of a purely federal function, the states could hold hostage the federal government and its functions. *City of New York*, 179 F. 3d at 35. In *City of New York*, the Second Circuit invalidated, on Supremacy Clause grounds, a New York law prohibiting voluntary cooperation with federal immigration officials. *Id.* It reasoned that in a dual-sovereign system, voluntary cooperation is necessary and if a conflict arises between those sovereigns, the Supremacy Clause resolves it. *Id.* at 35. Afterall, "[i]f Congress may not forbid states from outlawing even voluntary cooperation with federal programs by state and local officials, states will at times have the power to frustrate effectuation of some programs. Absent any cooperation at all from local officials, some federal programs may fail or fall short of their goals unless federal officials resort to legal processes in every routine or trivial matter, often a practical impossibility." *Id.* The court thus held that "states do not retain under the Tenth Amendment an untrammeled right to forbid all voluntary cooperation by state or local officials with particular federal programs." *Id.*

While the United States acknowledges that the Seventh Circuit's approach diverged in *McHenry County v. Raoul*, 44 F.4th 581 (7th Cir. 2022), as explained in the United States' prior briefing and at the August 3 hearing, *McHenry* was wrongly decided and is distinguishable. *See* ECF 9 at 15; ECF 79 (Transcript) at 76. The reasoning of the Second Circuit, which analyzes the

nature of the dual sovereign system in the context of cooperation, is far more persuasive.[3]

When a conflict arises—such as the conflict between Virginia's 287(g) law and 8 U.S.C. § 1357(g), the Supremacy Clause resolves the dispute in the United States' favor. *Id.* Here, the law is preempted and invalid because it conflicts with the program Congress created in Section 1357(g) and obstructs the cooperative nature of that system—cooperation that is a necessity in this dual sovereign system. *City of New York*, 179 F. 3d at 35.

### III. Virginia's Law is an Improper Regulation of the Federal Government that Obstructs Immigration Enforcement and is Invalid under the Reasoning of *CoreCivic* and *City of New York*

As explained in the prior briefing, Virginia's 287(g) law fails on discrimination grounds and regulation grounds under the doctrine of intergovernmental immunity. *See* ECF 9 at 16-20; ECF 56 at 9-16.

Regulation is sometimes discussed in obstruction terms. In *CoreCivic*, the Third Circuit

---

[3] The United States also notes that the Northern District of New York recently issued an opinion rejecting the United States' challenge to a New York law banning 287(g) agreements. *United States v. New York*, No. 1:26-cv-1360, 2026 WL 2225423 (N.D. N.Y. Aug. 3, 2026). The court there relied on the Seventh Circuit's reasoning in *McHenry County* without citing the Second Circuit's decision in *City of New York. Id.* at *16-17. It likewise did not consider the reasoning of the Third Circuit's decision in *CoreCivic* vis-à-vis the 287(g) termination law. *Id.* Finally the Court relied heavily on *City of El Cenizo v. Texas*, 890 F.3d 164, 178 (5th Cir. 2018), a Fifth Circuit decision finding that a law *requiring* cooperation did not violate the Supremacy Clause, but requiring cooperation with Congress's scheme is a far different law from one prohibiting such cooperation. *Id.* As to discrimination, the United States did not identify a comparator in that case, *id.* at 18, which differs from the present case. As to the Contract Clause claim, the court found that the legislative history supported the purpose advanced by New York to reduce costs and the law was a general exercise of New York's police power. *Id.* at *21. That turns the Contract Clause on its head, as it would allow states to eviscerate any costly contract it entered into that may relate to broad police powers. The court also focused on whether the state's actions were self-serving and applied a presumption that the law was valid, based upon *Conn. State Police Union v. Rovella*, 36 F.4th 54, 66 (2d Cir. 2022), but it does not appear that the Fourth Circuit Court of Appeals has ever cited that case, let alone endorsed it. And that law and this one clearly are self-serving based on the states' own justifications: preserving resources that an agreement was costing them. In any event, Virginia has never pointed to legislative history or context to support its post-hoc view of the law's purpose. The only clear purpose is to frustrate immigration enforcement just as with the Mask Ban.

noted that the Supreme Court evaluates regulation claims in terms of the ultimate purpose and effect, including whether it obstructs or burdens a federal function. *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 322-23 (3d Cir. 2025) (collecting cases). The court found that a law that targets only those with whom the Federal Government contracts still targets the Federal Government. *Id.* at 325-26. The reasoning applies here. Virginia claims its law only regulates its own entities by requiring all 287(g) contracts going forward to contain onerous conditions that regulate DHS. ECF 40 at 20. But by doing so, it forces DHS to either accept regulation by the State, including terms similar to those in the Mask and ID law that this Court already enjoined, *see* ECF 34 at 4 & 15.2-1726(c)(2), (3), or accept that cooperative 287(g) agreements are not available in Virginia. Virginia itself admits that the purpose of the law is to ban such agreements going forward. PI Opp., ECF 40 at 20. Indeed, on its face it only applies to DHS and Congress's authorized 287(g) program. Thus, Virginia's law obstructs Congress's scheme, as discussed *supra* in Section II, and also in the Government's prior briefing (ECF 9 at 20-21), by removing the *possibility* of such cooperative agreements despite the fact that Congress explicitly provided for them and intended for them to be used. *See CoreCivic*, 45 F.4th at 325-26.

\*       \*       \*

Applying the reasoning of *CoreCivic* and *City of New York* to Virginia's 287(g) law leads to the conclusion that Virginia's law cannot stand. Virginia admits that its law is designed to prevent entities in Virginia from entering future 287(g) agreements with the Federal Government. PI Opp. 20. The United States came forward with evidence as to why those voluntary agreements, of which there are approximately 28 in Virginia, support DHS's immigration enforcement mission, and why removal of those agreements, and barring those agreements in perpetuity, obstructs that mission. *See, e.g.*, ECF 9 at 27-28; ECF 9-1 at ¶¶ 17-22, 49-63. Virginia's law thus seeks to "forbid

8

all voluntary cooperation by state or local officials with particular federal programs" and is invalid under the Supremacy Clause because it is preempted by § 1357(g) and is an improper regulation that dictates how the United States must frame its 287(g) agreements in Virginia and with whom. *City of New York*, 179 F.3d at 35.

Though beyond the scope of this Statement of Position, the United States reiterates that as set forth in the prior briefing and as argued at the August 3, 2026, hearing, Virginia's law is also invalid because it discriminates against the United States by targeting immigration enforcement and by imposing conditions that are not imposed on other cooperative contracts under 15.2-1726 and 15.2-1727, and because it violates the Contracts Clause.

## CONCLUSION

For the foregoing reasons, and those set forth in the prior briefing, the United States respectfully requests that this Court enjoin SB 783, codified at Virginia Code §15.2-1726.1.

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

*/s/ Gerard Mene*
GERARD MENE
Assistant United States Attorney
Eastern District of Virginia
Counsel for the United States
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Gerard.Mene@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TIBERIUS DAVIS
CHARLES E.T. ROBERTS
Counsel to the Assistant Attorney General

JACQUELINE COLEMAN SNEAD
Deputy Director

ALESSANDRA FASO
Senior Litigation Counsel

By: *s/ Alexandra McTague Schulte*
ALEXANDRA MCTAGUE SCHULTE
Senior Litigation Counsel
U.S. Department of Justice Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386

9

Washington, DC 20044
202-718-0483
Alexandra.Schulte@usdoj.gov