**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

THE UNITED STATES OF AMERICA,

     Plaintiff,

  v.

THE COMMONWEALTH OF VIRGINIA,
*et al.*,

     Defendants.

No. 3:26-cv-00545-REP

**PLAINTIFF'S RESPONSE TO
VIRGINIA'S STATEMENT OF
POSITION PURSUANT TO THE
COURT'S ORDER (ECF 79)**

   The United States submits this response to Virginia's Statement of Position, ECF 80, regarding the scope of the Virginia legislature's authority to enact a law voiding existing contracts and restricting new contracts on the basis of Virginia's disagreement with federal immigration policy. This Court asked Virginia to identify the authority by which localities entered into Section 287(g) agreements, which it did, and to explain the authority that allows Virginia to modify those existing agreements, which is less clear from Virginia's Statement. In attempting to answer those questions, Virginia ignored a relevant part of its own Constitution and underscored the unconstitutionality of the 287(g) Law.

   First, Virginia admits that Virginia Code Section 15.2-1726 provided the authority for localities to enter into 287(g) contracts with the Department of Homeland Security just as it allows localities to enter cooperative agreements with any state and local law enforcement. *Id.* at 2-3. It reiterates that it does not claim such contracts were *ultra vires*. *Id.* at 3. Instead, Virginia contends that Virginia Code Section 15.2-1726.1 modifies the rights granted under Section 15.2-1726 *only* for 287(g) agreements, *id.* at 3, underscoring the fact that the 287(g) Law singles out and thus discriminates against the Federal Government. Indeed, that is the purpose and effect of the law.

1

Second, Virginia is less clear about its authority to demand that the existing contracts be modified or else be voided by operation of law, instead arguing that state law does not prohibit its actions, the General Assembly can limit contracting power, and at any rate the contracts can be terminated at will. *Id.* at 3-4. Virginia claims that it found no authority that prohibits it from limiting local contracts that are "abhorrent to state policy." *Id.* at 4. To the extent Virginia is suggesting that federal immigration policy is "abhorrent to state policy," that is wrong because immigration policy is outside of State policy; "[t]he federal power to determine immigration policy is well settled." *Arizona v. United States*, 567 U.S. 387, 395 (2012).

Relatedly, Virginia argues that because its localities derive their powers from the State, the State can direct them to terminate their contracts. ECF 80 at 5-6. But if the State had such direct control over its localities, it would have simply directed them to terminate the contracts just as Governor Spanberger did for state law enforcement. It did not do so because it does not have that level of control. Rather, it delegated and ceded such control to enter contracts and to control police departments to its localities through various laws. *See, e.g.*, ECF 56 at 19-20. The 287(g) Law seeks to modify that baseline in a discriminatory and regulatory manner that vitiates existing contracts and defeats a Congressional program. That is unconstitutional regardless of whatever authority the state may have, in the abstract, to narrow the scope of its localities' contracting power.

Third, and similarly, Virgina's focus on Dillon's Rule and the state's general authority over localities does not give it carte blanche to eviscerate existing agreements or violate the Supremacy or Contract Clause. ECF 80 at 4. Ironically, Virginia ignores a key part of its own Constitution, which provides in relevant part, "that the General Assembly shall not pass any law impairing the obligation of contracts." Va. Const. Art. I, § 11. Virginia's contract clause mirrors that of the U.S. Constitution and has been interpreted by the Virginia Supreme Court "in a manner similar to the

2

treatment of the federal clause by the United States Supreme Court." *Working Waterman's Ass'n. v. Seafood Harvesters, Inc.*, 314 S.E.2d 159, 163 (Va. 1984). Consistent with Supreme Court precedent, in *Working Waterman's Ass'n*, the Virginia Supreme Court analyzed the clear public purpose behind the law; Dillon's Rule was not mentioned in that decision at all. *See generally id.* Indeed, the undersigned counsel was unable to find any case in which a Virginia state court analyzed a contract clause claim under the Virginia Constitution with reference to Dillon's Rule. And that makes sense. Dillon's Rule is not a defense to an unconstitutional action. And thus it is not a defense here. Virginia's 287(g) Law is an unconstitutional exercise of the Virginia General Assembly's power in violation of both the Contract Clause and the Supremacy Clause of the U.S. Constitution. Indeed, the Contract Clause was meant to prevent states from terminating contracts for their own purposes, and the Supremacy Clause means that states cannot discriminate against or regulate the federal government or defeat a congressional program. The 287(g) Law runs afoul of all of those principles; no state law rule can overcome them. Whether Virginia's General Assembly has a right to modify the contracting power of localities is almost beside the point because whatever power it may have to do so cannot be exercised in an unconstitutional manner.

Fourth, Virginia argues that its law is constitutional because 8 U.S.C. § 1357(g) says local officers can only carry out federal immigration-enforcement functions pursuant to a 287(g) agreement to the extent consistent with state and local law, and that therefore Congress intended for the agreements to be modified if state or local law were modified. ECF 80 at 5. Stating that an agreement may only be entered if consistent with state or local law is a far cry from allowing states to modify or nullify existing agreements, particularly in a way that violates both the Contract Clause and the Supremacy Clause. A 287(g) agreement likely cannot turn a local dog catcher into a deputized federal officer if state law does not provide animal control with any law enforcement

3

authority. But the state cannot ban all cooperation, especially not for existing contracts or in a discriminatory fashion.

Fifth, Virginia likewise argues that because the 287(g) agreements allow for at-will termination, there can be no substantial impairment or other constitutional infirmity for commanding localities to exercise that option. ECF 80 at 5-6. To start, many of the agreements require a 90-day notice period that this law ignores. Further, forcing parties to terminate contracts they wish to keep is still a substantial impairment and causes irreparable constitutional injuries to the United States, as the United States previously explained. *See, e.g.*, ECF 9 at 22-23, 27, ECF 56 at 5-6. In any event, the law doesn't require termination, it states that the localities must modify the contracts in accordance with the conditions in the law and if they fail to do so, the contracts will be void. Va. Code. § 15.2-1726.1(D), (E).

Sixth, Virginia reprises its arguments that its actions serve a legitimate public purpose. ECF 80 at 6-7. The United States rebutted such arguments in its briefing and at oral argument and will not belabor the points here. Suffice it to say, Virgina's reasoning is post hoc and finds no basis in the law or its history, the alleged purpose is not furthered by the 12 onerous requirements of subsection (c) of the new law, and even crediting the alleged purpose, it is self-interested and is thus subject to heightened scrutiny. Nor does Virginia explain how eviscerating cooperation between law enforcement agencies furthers public safety rather than undermining it. Virginia also relies on a recent case out of the Northern District of New York (ECF 80 at 7), which the United States addressed in its own Position Statement (ECF 81 at 7 n.3).

Finally, the United States notes that in asserting its law is constitutional, Virginia makes no mention of the Supremacy Clause problems raised by the United States, including that Virginia's law impermissibly regulates and discriminates against the Federal Government. Those are

substantial arguments that also cannot be cured by Dillon's Rule. Indeed, the District of Maryland just granted a preliminary injunction on discrimination grounds, finding that a law specifically targeting immigration detention facilities discriminated against the federal government both because those facilities were for federal immigration enforcement and because the law treated immigration facilities worse as compared to other kinds of detention facilities. *Genesis GSA Strategic One LLC v. Howard County*, No. 26-cv-915, 2026 WL 2294479 at *19-20 (D. Md. Aug 10, 2026). Thus singling out immigration enforcement for worse treatment, as the 287(g) Law admittedly does, is unlawful discrimination.

In short, Virginia's legislature may have some authority to change the contracting power of Virginia's localities, but such authority is circumscribed by the U.S. Constitution. Dillon's Rule is not a shield to an unconstitutional exercise of power. Virginia's 287(g) Law violates the Contract Clause and the Supremacy Clause and should be preliminarily enjoined.

Respectfully submitted,

TODD BLANCHE
Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

*/s/ Gerard Mene*
GERARD MENE
Assistant United States Attorney
Eastern District of Virginia
Counsel for the United States
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Gerard.Mene@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TIBERIUS DAVIS
CHARLES E.T. ROBERTS
Counsel to the Assistant Attorney General

JACQUELINE COLEMAN SNEAD
Deputy Director

ALEXANDRA MCTAGUE SCHULTE
Senior Litigation Counsel

By: *s/ Alessandra Faso*
ALESSANDRA FASO
Senior Litigation Counsel
U.S. Department of Justice Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386, Washington, DC 20044
202-451-7728
alessandra.faso@usdoj.gov

5