**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

THE UNITED STATES OF AMERICA,

Plaintiff,

v.

THE COMMONWEALTH OF VIRGINIA, *et al.*,

Defendants.

No. 3:26-cv-00545-REP

**PLAINTIFF'S REPLY IN SUPPORT OF ITS STATEMENT OF POSITION PURSUANT TO THE COURT'S ORDER (ECF 79)**

## INTRODUCTION

This Court asked the United States to explain its position as to how Virginia's 287(g) Law obstructs a federal function (ECF 79), which it did in its eight-page statement of position (ECF 81). In its 15-page response (ECF 82), Virginia broadly addresses numerous issues in the case, raises new arguments, asserts new justifications for its law, and goes far afield from the question this Court asked. The majority of its response is an improper surreply to the United States' preliminary injunction motion and should be stricken.

But even if this Court were to consider Virginia's new arguments, such arguments do not change the outcome here. Virginia's 287(g) Law violates the Supremacy Clause and the Contract Clause and should be enjoined.

First, on the question of obstructing a federal law, which is the question this Court asked, Virginia argues that a voluntary program cannot be obstructed as a matter of law because it is voluntary. Not so. Indeed, in *Arizona*, the Supreme Court found that an Arizona law obstructed the purpose behind 8 U.S.C. § 1357(g), despite the voluntary nature of the cooperation envisioned by that section. *Arizona v. United States*, 567 U.S. 387, 410 (2012). Further, the Second Circuit held that states cannot engage in "passive resistance" to federal programs under the auspices of the

Tenth Amendment. *City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999). No court should sanction such resistance to federal policy, though that is what Virginia asks of this Court. Virginia's 287(g) Law obstructs the federal program by nullifying agreements pursuant to it and all but banning it through the onerous conditions the law imposes on federal officers. That is an obstruction of the Congressional purpose expressed in 8 U.S.C. § 1357(g).

Virginia goes far beyond any question of obstructing federal purpose to argue for the first time that Section 1357(g) is not a valid preemption provision because it allegedly does not regulate private actors, (ECF 82 at 2-3), that there is no preemption because Section 1357(g) lacks an express preemption clause (ECF 82 at 7), and that the Second Circuit's decision in *City of New York* is no longer good law (ECF 82 at 7). All of these new arguments should be stricken, and anyway they fail on the merits. Virginia also is unable to determine the scope of its own law. While its preliminary injunction opposition brief declared that the law prevents new 287(g) agreements, its new brief claims the opposite. *Compare* ECF 40 at 20 (stating Virginia's 287(g) Law "treats all Virginia agencies the same: none may enter into new 287(g) agreements") *with* ECF 82 at 9 ("Second, the 287(g) Law is not a 'ban' on 287(g) agreements."). Virginia cannot prevail on its arguments that its law is not preempted when it cannot even articulate the scope of its own law to determine the extent of the conflict with federal law.

Virginia also reargues that the United States' claims asserting the Virginia 287(g) Law is invalid under principles of intergovernmental immunity and the Contract Clause, and includes new arguments and explanations in doing so. Virginia's arguments go far beyond the scope of this Court's briefing order and amount to an improper surreply to the original motion. Those arguments should be stricken. In any event, as discussed herein, they also fail on the merits.

Virginia's 287(g) Law is unconstitutional for all the reasons explained herein and in the United States' prior briefing, and it should be preliminary enjoined.

## ARGUMENT

### I. Virginia's 287(g) Law Is Conflict Preempted

As explained in the United States' Position Statement (ECF 81), Section 1357(g) was specifically designed to create a program whereby states and localities could opt into assisting with federal immigration enforcement efforts. Virginia claims its law does not conflict with Section 1357(g) (ECF 82 at 3-4), but fails to address the specific conflicts identified by the United States. *See, e.g.*, ECF 81 at 5. The conflict arises because Virginia has taken the position that its law bans agreements going forward which is an obstacle to the cooperative program envisioned by Congress, and because the terms of the law itself conflict with aspects of the Congressional immigration scheme. *See id.* As the Second Circuit explained in *City of New York*, states cannot ban even cooperative Congressional schemes, yet that is what Virginia seeks to do. *City of New York*, 179 F.3d at 35.

In defense of its law, Virginia first claims that the United States misreads *City of New York* as a preemption case when it is a Tenth Amendment case. Those are two sides of the same coin. Indeed, the Court upheld the challenged laws and held that "the effect of those Sections here is to nullify an Order that singles out and forbids voluntary cooperation with federal immigration officials." *Id.* at 37. The case may have started as one seeking a declaratory judgment on Tenth Amendment grounds, but it ended with the New York Executive Order nullified. Virginia also wrongly suggests *City of New York* is no longer good law in view of a Northern District of Illinois decision (*City of Chicago v. Sessions*) and a Supreme Court decision (*Murphy v NCAA*). ECF 82 at 7-8. But the Second Circuit considered a similar issue in *New York v. United States DOJ* after

the Supreme Court's decisions in *Murphy* and *Arizona,* and reiterated that while *Arizona* found that the federal scheme left room for a state policy *requiring* information sharing, "[t]he same conclusion may not be so easy to reach … with respect to a state policy *prohibiting* information sharing." *New York v. US DOJ*, 951 F.3d 84, 114 (2d Cir. 2020). The Second Circuit there refused to reconsider *City of New York* in light of *Murphy*, and rejected the district court's conclusion that *City of New York* and other cases did not survive *Murphy*. *Id.* at 112-114. Thus, while this Court is not bound by these Second Circuit decisions, they remain good law.

Indeed, the Supreme Court discussed the cooperation provisions of the INA in *Arizona*, and ultimately struck down a state law that went beyond the confines of Section 1357(g) by providing state officers with *more* authority to arrest than Congress provided for in the INA. *Arizona*, 567 U.S. at 410. The Court did so on obstacle preemption grounds because the Arizona scheme removed the need for any cooperation at all by assigning broad powers to state officers. *Id.*at 410-11. The reverse is also true: a scheme such as Virginia's that removes the cooperation created by Congress also frustrates the objectives of the Congressional scheme. For the same reasons, Virginia's invocation of a "brooding federal interest" fails. ECF 82 at 4. In *Arizona*, the Supreme Court found a federal interest in protecting the Congressional cooperation scheme as written; the fact that cooperation under the federal scheme of § 1357(g) was voluntary did not prevent a finding of obstacle preemption. *Arizona*, 567 U.S. at 410.

Virginia also claims that there can be no preemption because Section 1357(g) lacks an express preemption clause (ECF 82 at 7), but the United States does not argue express preemption here making the point wholly irrelevant. Obstacle preemption is a sperate doctrine that exists absent an express preemption provision, just like in *Arizona*. Likewise Virginia argues that there can be no obstacle preemption because Congress anticipated states may "constrain the conduct of

state and local officials who participate in 287(g) agreements" by stating such agreements must be consistent with state and local law. ECF 82 at 4. But Virginia's 287(g) Law targets federal officers within the Department of Homeland Security; it is not addressed to state and local officials. *See* 15.2-1726.1(c)(1)-(12). Moreover, nothing in the language of § 1357(g) suggests Congress intended for states to completely undermine the purpose of the section by barring cooperation through such agreements. State law has some role in the scheme, but it cannot use its law to regulate federal officers, discriminate against the federal government, vitiate existing agreements, or destroy Congress's cooperative scheme.

Virginia also relies on *United States v. New York*, 2026 WL 2225423 (N.D.N.Y. Aug. 30, 2026). As the United States explained in its position statement, that case suffers from numerous flaws. ECF 81 at 7 n.3. Indeed, one such flaw is the binary thinking used by that court to suggest that Congress's scheme is either wholly voluntary or it must be mandatory in violation of the Tenth Amendment. ECF 82 at 5 (quoting *United States v. New York* and stating that Congress could not have mandated 287(g) agreements). The New York court and Virginia ignore the middle ground of Section 1357(g): that Congress's scheme remains available and states cannot block it entirely as Virginia has done. Indeed, that precisely why, as the United States has argued, a locality is free to decline to participate, but a state law banning all participation in the state, even if a locality wishes to participate, obstructs the Congressional scheme.[1]

[1] Virginia makes an argument about there being no distinction between a policy and a law for preemption purposes. ECF 82 at 8. The United States here has said a blanket law such as Virginia's is different from individual decisions not to participate, which may turn on any number of factors. It has also said it does not challenging here the Governor's executive order directing the state police to terminate 287(g) agreements. The issue of a law versus a policy is simply not at issue here and it is unclear why Virginia believes it is.

Finally, Virginia argues, for the very first time, that Section 1357(g) is not a valid preemption provision at all because it does not regulate private parties under *Murphy v. NCAA*. ECF 82 at 2. That argument is outside the scope of this Court's limited supplemental briefing order and has never been raised before. It is thus waived. In any event, that argument fails for the simple reason that in *Arizona*, the Supreme Court relied on Section 1357(g) in its preemption analysis, finding it did in fact preempt the challenged law. *Arizona*, 567 U.S. at 410. Indeed, the INA as a whole regulates private parties—aliens. Reading the provisions in isolation in an attempt to ignore the overall regulatory scheme is the wrong analysis. *See, e.g.*, *New York*, 951 F.3d at 114 n.27 ("As already noted, § 1373 is one provision of a larger statute, the INA, which certainly confers rights and places restrictions on large numbers of private persons."). Nothing in *Murphy* suggests that it was intended to, or does, overrule *Arizona.*

Congress created a cooperative scheme throughout the INA, including in § 1357(g). Virginia's law obstructs that scheme. By doing so, it has violated the Supremacy Clause of the Constitution and its law is invalid."

## II. Virginia's 287(g) Law Violates Intergovernmental Immunity

The United States provided a very brief explanation of its regulation claim (ECF 81 at 7-8) because regulation is sometimes phrased in obstruction terms and this Court asked about the United States' position on obstruction. In response, Virginia provided seven pages of argument on intergovernmental immunity and the Contract Clause (ECF 82 at 9-16). Such argument is beyond the scope of this Court's order and should be stricken in its entirety because it amounts to an improper surreply on the United States' preliminary injunction motion. *See* L.R. 7(F) (prohibiting additional briefs without leave of court). And any new arguments not raised in the preliminary injunction briefing is waived.

Virginia's arguments also fail. Virginia relies heavily on the district court decision in *United States v New York*, as evidence that its own law does not regulate the Federal Government. As explained in the United States' opening position statement, that case was wrongly decided. ECF 81 at 7 n.3. Further, the New York law differed in that it provided that no 287(g) contract could be entered into or maintained. *See* NY CLS Exec. § 170-k(2)(a)(i). While the United States believes the New York law is unconstitutional, the New York law differed from Virginia's in that it did not impose a list of 12 onerous conditions on *federal* immigration enforcement officers as Virginia's law does. *See* 15.2-1726.1(C)(1)-(12). Those conditions regulate the Federal Government. The court in *United States v. New York* also did not look behind the purpose of the regulation, as was done in *Core Civic*; it ignored *Core Civic.* Here, the clear purpose and intent of Virginia's law is to obstruct federal immigration enforcement. In *United States v. New York*, the court found that the New York law had no comparator for discrimination purposes, whereas here the United States has identified comparator sections that authorize agreements, including the very section that Virginia says granted the authority for the 287(g) agreements in the first place. Further, the United States maintains that discriminating against a purely federal function is discrimination, even though the court in *United States v. New York* rejected that contention. The New York law also did not void the contracts by operation of law. *Id.* §(D), (E). Further, the court in *United States v. New York* found that the legislative history supported New York's asserted public purposes for Contract Clause purposes; here Virginia's alleged purposes are not so supported, as the United States previously explained.

Virginia now asserts new purposes for its law under the Contracts Clause and new arguments as to why modification should have been anticipated. This too is improper. And such arguments also fail. The fact that Virginia cannot settle on the alleged legitimate public purpose

justifying its law and continues to assert new purposes shows none of these purposes is legitimate and the true purpose is to obstruct federal immigration policy. That is particularly true given that Virginia's alleged purposes are not found in the legislative history and are not otherwise supported by evidence. That is improper.

Virginia now claims the law is to "prevent[] law enforcement misconduct." ECF 82 at 15. Virginia in no way explains how prohibiting cooperation between state and local law enforcement on the one hand, and federal immigration enforcement on the other, prevents alleged law enforcement misconduct. If anything, this admits that Virginia is trying to regulate the conduct of federal officers. Virginia also claims that preserving state resources is akin to the situation in *Baltimore Teachers Union v. Mayor & City Council of Baltimore*, 6 F.3d 1012 (4th Cir. 1993). But there, the record reflected specific facts about the budget shortfalls of the City of Baltimore. *Id.* at 1014. Here, Virginia asserts only a generic financial interest which is belied by the State's budgets, as the United States previously explained. ECF 56 at 8-9. Nor can Virginia's concerns be taken seriously where the 12 onerous restrictions it imposes on 287(g) agreements in claiming it is not banning them would in no way ameliorate Virginia's alleged resources concerns. All of Virginia's purposes are made up after the fact justifications for a transparent attempt to impede federal immigration enforcement. Finally, Virginia claims that Section 1357(g) contemplates that the states can modify their own laws to revise or impair 287(g) agreements and that such modifications should be expected. That too is incorrect. First, there is nothing in § 1357(g) to suggest that Congress intended to waive the protections of the Constitution, including the Contract Clause. Second, the cases relied upon by Virginia, including *Energy Reserves Group* and *City of Charleston*, pertained to regulated public utilities which routinely face rate changes and other regulations, and are thus inapposite. At bottom the Contract Clause operates as a restriction on

states from doing exactly this: eviscerating existing contracts parties relied on for its own self-interested gains.

**CONCLUSION**

For the foregoing reasons, and for those set forth in the prior briefing in this matter, Virginia's 287(g) law violates the Supremacy Clause and the Contract Clause and should be preliminarily enjoined.

Respectfully submitted,

TODD BLANCHE
Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

*/s/ Gerard Mene*
GERARD MENE
Assistant United States Attorney
Eastern District of Virginia
Counsel for the United States
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Gerard.Mene@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TIBERIUS DAVIS
CHARLES E.T. ROBERTS
Counsel to the Assistant Attorney General

JACQUELINE COLEMAN SNEAD
Deputy Director

ALESSANDRA FASO
Senior Litigation Counsel

By: *s/ Alexandra McTague Schulte*
ALEXANDRA MCTAGUE SCHULTE
Senior Litigation Counsel
U.S. Department of Justice Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386, Washington, DC 20044
202-718-0483
alexandra.schulte@usdoj.gov