**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE COMMONWEALTH OF VIRGINIA, JAY JONES, in his official capacity as Attorney General of Virginia.<br><br>Defendants. | No. 3:26-cv-00545-REP<br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS III, IV, V, AND VI OF PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)** |

**TABLE OF CONTENTS**

**INTRODUCTION** .......... 1

**BACKGROUND** .......... 2

- **I. Legal Framework** .......... 2
- **II. Factual Background** .......... 3
- **III. The Challenged 287(g) Law: Virginia Code § 15.2-1726.1** .......... 4
- **IV. Procedural History** .......... 6

**LEGAL STANDARD** .......... 6

**ARGUMENT** .......... 7

- **I. The United States Has Pre-Enforcement Standing** .......... 7
- **II. The Claim is Ripe for Review** .......... 10

**CONCLUSION** .......... 14

## TABLE OF AUTHORITIES

**Cases**

*Air Evac EMS, Inc. v. Cheatham*,
260 F. Supp. 3d 628 (S.D. W. Va. 2017) ........ 12

*Arizona v. United States*,
567 U.S. 387 (2012) ........ 2

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979) ........ 8

*Charter Fed. Sav. Bank v. Off. of Thrift Supervision*,
976 F.2d 203 (4th Cir. 1992) ........ 11

*Chiles v. Salazar*,
146 S. Ct. 1010 (2026) ........ 9

*Clark v. Suarez Martinez*,
543 U.S. 371 (2005) ........ 2

*Di Biase v. SPX Corp.*,
872 F.3d 224 (4th Cir. 2017) ........ 13

*Durden v. United States*,
736 F.3d 296 (4th Cir. 2013) ........ 6

*Hisp. Leadership Fund, Inc. v. Fed. Election Comm'n*,
897 F. Supp. 2d 407 (E.D. Va. 2012) ........ 11

*Inst. for Free Speech v. Johnson*,
148 F.4th 318 (5th Cir. 2025) ........ 10

*Kerns v. United States*,
585 F.3d 187 (4th Cir. 2009) ........ 7

*Maryland Shall Issue, Inc. v. Hogan*,
963 F.3d 356 (4th Cir. 2020) ........ 8

*McClary v. Jenkins*,
102 Va. Cir. 187 (Cir. Ct. 2019) ........ 3

*Miller v. Brown*,
462 F.3d 312 (4th Cir. 2006) ........ 11

*Mobil Oil Corp. v. Attorney Gen. of Va.*,
940 F.2d 73 (4th Cir.1991) ........................................................................................ 10

*Retail Indus. Leaders Ass' v. Fielder*,
475 F.3d 180 (4th Cir. 2007) ....................................................................................... 11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)........................................................................................................ 7

*Steffel v. Thompson*,
415 U.S. 452 (1974)........................................................................................................ 7

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)..................................................................................................... 7, 9

*United States v. Alas*,
63 F.4th 269 (4th Cir. 2023) ........................................................................................... 2

*United States v. California*,
173 F.4th 1060 (9th Cir. 2026) ....................................................................................... 9

*United States v. Missouri*,
114 F.4th 980 (8th Cir. 2024) ....................................................................................... 10

*United States v. Patlan*,
No. 1:09CR214 (JCC), 2009 WL 1795368 (E.D. Va. June 22, 2009) ........................................ 3

*United States v. Sosa-Carabantes*,
561 F.3d 256 (4th Cir. 2009) ......................................................................................... 2

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000)........................................................................................................ 9

**Statutes**

8 U.S.C. § 1357(g) .......................................................................................................... 2

8 U.S.C. § 1357(g)(1)-(9) ................................................................................................. 2

8 U.S.C. § 1357(g)(2) ...................................................................................................... 2

8 U.S.C. § 1357(g)(3) ...................................................................................................... 2

Va. Code § 1-214 ............................................................................................................. 4

Va. Code § 15.2-1726.1 ................................................................................................... 1

Va. Code § 15.2-1726.1(A)........................................................................................... 4

Va. Code § 15.2-1726.1(C)........................................................................................ 1, 5, 12

Va. Code § 15.2-1726.1(D)........................................................................................ 5, 8, 12

Va. Code § 15.2-1726.1(E)............................................................................................ 5, 8

Va. Code § 15.2-1726.1(F)............................................................................................ 5, 9

**INTRODUCTION**

On April 22, 2026, Governor Abigail Spanberger signed an unconstitutional law that prohibited the Federal Government from entering, renewing, or even continuing existing, voluntary agreements to cooperate on immigration enforcement with local Virginia law enforcement. Va. Code § 15.2-1726.1. That law went into effect on July 1, 2026, requiring all existing agreements to be modified to include 12 onerous provisions that regulate how federal law enforcement operates in Virginia. *Id.* § 15.2-1726.1(C). That law has already caused irreparable harm to the Federal Government by disrupting these important agreements. Yet, somehow, Virginia absurdly argues that this case is unripe because *existing* agreements will not be *voided* until September 1. ECF 54 (MTD) at 3. Tellingly, Virginia has never contested the United States' pre-enforcement standing to challenge this law. That is because the injury is immediate, ongoing, and apparent. Indeed, new agreements without Virginia's draconian demands are *already* prohibited. This means the United States cannot enter into *any* new cooperative agreements with otherwise willing participants. The enactment of this law has already prompted one sheriff's department to withdraw from the 287(g) Task Force Program and a regional jail to terminate its 287(g) agreement effective September 1. ECF 56-1 (Weiss Supplemental Declaration) ¶¶ 6, 8; *see also* ECF 80-1 at 4-5 (termination notices). And in just over two weeks, the remaining 29 vital agreements will be voided (likely before this Court rules on this motion) because the United States refuses to abide by Virginia's demands. ECF 1 (Compl.) ¶¶ 12, 79, 113; *see also* ECF 9-1 (Weiss Declaration) ¶ 62. That will cause irreparable harm to the United States. The idea that this dispute is not ripe for review is therefore unfounded. Accordingly, this Court can easily dispose of Virginia's 12(b)(1) motion to dismiss.

## BACKGROUND

### I. Legal Framework

Congress recognized that cooperation with state and local law enforcement is essential. *See Arizona v. United States*, 567 U.S. 387, 411 (2012) ("Consultation between federal and state officials is an important feature of the immigration system."). Congress thus added Section 287(g) to the Immigration and Nationality Act (INA) (codified at 8 U.S.C. § 1357(g)) as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) to help further that cooperation in the immigration sphere. Pub. L. No. 104-208, div. C, sec. 113, 110 Stat. 3009, 3009–546 (1996). Under Section 287(g), qualified state and local officers designated by the Secretary of Homeland Security[1] may perform specified immigration enforcement functions relating to investigating, apprehending, and detaining aliens. 8 U.S.C. § 1357(g)(1)-(9); *see also Arizon*a, 567 U.S. at 408-09. Section 287(g) requires that the specified officers "have knowledge of, and adhere to, Federal law" relating to immigration enforcement and that they receive "adequate training regarding the enforcement of relevant Federal immigration laws." 8 U.S.C. § 1357(g)(2); *see also United States v. Alas*, 63 F.4th 269, 274 (4th Cir. 2023). This provision specifies that in enforcing immigration laws, the state or local officer "shall be subject to the direction and supervision of the [Secretary]." 8 U.S.C. § 1357(g)(3); *see United States v. Sosa-Carabantes*, 561 F.3d 256, 257–58 (4th Cir. 2009). "In short, Section 287(g) 'permits ICE to deputize local law enforcement officers to perform immigration enforcement activities pursuant to a written agreement,' and 'ICE trains the local law enforcement officers who participate.'" *Alas*, 63 F.4th at 274.

[1] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" are now read to mean the Secretary of Homeland Security. *See Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

## II. Factual Background

The Federal Government has entered into 287(g) agreements with Virginia law enforcement for many years. *See, e.g., McClary v. Jenkins*, 102 Va. Cir. 187, 187 (Cir. Ct. 2019) (sustaining demurrer because sheriff was permitted by Federal law to enter into § 287(g) agreement); *United States v. Patlan*, No. 1:09CR214 (JCC), 2009 WL 1795368, at *1 (E.D. Va. June 22, 2009) (alien defendant arrested in Virginia and interviewed by a local law enforcement officer authorized under § 287(g)). The Department of Homeland Security (DHS) has relied on such agreements over the years to assist its immigration enforcement efforts in the Commonwealth and continues to do so.

On February 27, 2025, then-governor of Virginia Glenn Youngkin issued Executive Order 47, "Keeping Virginia Safe from Dangerous Criminal Illegal Immigrants," directing the Virginia State Police and Department of Corrections to enter into 287(g) agreements with ICE and encouraging counties and municipalities to do the same. Compl. ¶ 104.

As of March 30, 2026, ICE had 28 active agreements with entities in Virginia. Compl. ¶ 96. During the pendency of the action (but before Virginia Code § 15.2-1726.1 (the 287(g) Law) went into effect), the Shenandoah Police Department entered into a 287(g) agreement with ICE, bringing the total to 29 agreements. *See* Exhibit A (Shenandoah Police Department 287(g) Task Force Model Agreement). After the 287(g) Law was enacted, the Smyth County Sheriff's Office withdrew from the 287(g) Task Force Program. Weiss Supp. Decl. ¶ 8; ECF 80-1 at 5 (termination notice). Moreover, in the wake of the 287(g) Law's enactment, the Rappahannock Shenandoah Warren Regional Jail notified ICE of the termination of their Warrant Service Officer program agreement effective September 1, 2026, and informed ICE that it would no longer hold individuals for the under 72-hour period. Weiss Supp. Decl. ¶ 6; ECF 80-1 at 4 (termination notice).

On February 4, 2026, Governor Spanberger issued Executive Directive 1, rescinding Youngkin's prior Executive Order 47 and ordering State agencies to terminate 287(g) agreements with ICE. DHS received termination notices from numerous state agencies. *Id.* ¶ 105. DHS still has 29 287(g) agreements with localities in Virginia.

## III. The Challenged 287(g) Law: Virginia Code § 15.2-1726.1

On April 22, 2026, Governor Spanberger signed SB 783 and HB 1441 into law, adding Section 15.2-1726.1, Immigration enforcement agreements with Federal authority; required provisions, to the Virginia Code. Compl. Exh. B. The law took effect on July 1, 2026. Va. Code § 1-214. This new section defines "Federal immigration enforcement agreement" as "an agreement with a federal agency authorizing a law-enforcement officer or employee of the Commonwealth or any of its localities to perform a function of a Federal immigration officer or an intergovernmental service agreement with a Federal agency authorizing the civil immigration detention of a person in a local, regional, or state correctional facility if such facility also detains or incarcerates persons for violations of the criminal laws of the Commonwealth." *Id.* § 15.2-1726.1(A). It also defines "law-enforcement agency" as "any state or local agency that employs law-enforcement officers and that has as its principal function the enforcement of the laws of the Commonwealth and its localities." *Id.* The law explicitly includes "any sheriff's office, any police department, any local or regional correctional facility, the Department of State Police, the Department of Corrections, the Department of Juvenile Justice, or any other local or state agency or department that performs law-enforcement functions or that was created to enforce the laws of the Commonwealth and its localities." *Id.*

The 287(g) Law targets both current and future agreements with DHS, providing that "[n]o law-enforcement agency shall maintain, renew, or enter into any federal immigration enforcement

agreement unless such agreement includes" 12 specific provisions. *Id.* § 15.2-1726.1(C). Those provisions seek to regulate federal immigration enforcement in the State, including what ICE agents must wear, where they may enforce the immigration laws, which laws they must comply with, what jurisdiction ICE agents are subject to, what legal process ICE agents may use for immigration enforcement, and what technology ICE may or may not use in Virginia. Subsection (C) requires every 287(g) agreement to include provisions that agree that federal agents will be bound by Virginia state law, including for liability purposes, rather than federal law, and limits the investigative techniques and legal process federal agents may use for immigration enforcement matters. *Id.* This provision also places restrictions on what federal officers may wear and where they may operate and requires ICE to provide advance notice of immigration enforcement efforts to localities, including the identities of the agents who will be involved. *Id.*

Section (D) provides that, "Any law-enforcement agency that has an existing Federal immigration enforcement agreement that is in effect on July 1, 2026, shall obtain in writing no later than September 1, 2026, a modified federal immigration enforcement agreement that complies with the conditions provided in subsection C." *Id.* § 15.2-1726.1(D). "Any Federal immigration enforcement agreement that is not modified in accordance with the provisions of this subsection *shall* be deemed void and unenforceable." *Id.* (emphasis added). This provision thus targets existing agreements with the Federal Government that are in effect as of the date the law takes effect. New agreements, however, are already prohibited absent the 12 conditions. Section (E) states that, "Any Federal immigration enforcement agreement entered into or maintained in violation of this section shall be void and unenforceable." *Id.* §15.2-1726.1(E). The Attorney General of Virginia can seek injunctions to enforce the law. *Id.* § 15.2-1726.1(F).

**IV. Procedural History**

On June 11, 2026, the United States sued the Commonwealth of Virginia and the Attorney General of Virginia ("Defendants" or "Virginia") to enjoin a newly enacted set of unconstitutional laws. At issue here, Counts III, IV, V, VI challenge the 287(g) Law and assert that the law violates the Contract Clause, is preempted, discriminates against, and regulates the Federal Government. On June 17, 2026, the United States moved for a preliminary injunction to enjoin all of the challenged laws, including the 287(g) Law. ECFs 8, 9. Because existing 287(g) agreements would not be voided until September 1, 2026, the Court bifurcated the claims and set a separate briefing schedule for the challenge to the 287(g) Law. ECF 12. That motion has since been fully briefed, ECFs 56, 80, 81, 82, 84, 85, 86, and a hearing was held on August 3, 2026. ECF 75. The Court held a telephonic conference on August 12. A continuation of the preliminary injunction hearing on the 287(g) Law is scheduled for August 20. *Id.*

Defendants moved to dismiss the Complaint under 12(b)(1) and 12(b)(6). ECFs 52-55. The arguments therein largely reflect those already briefed for the preliminary injunction. In the instant motion to dismiss under Rule 12(b)(1), Defendants simply argue that the United States' claims as to the 287(g) Law are unripe because existing 287(g) agreements will not be voided until September 1, 2026. MTD at 3.

## LEGAL STANDARD

A defendant contesting subject-matter jurisdiction may (1) "attack[] the veracity of the allegations contained in the complaint or" (2) "contend[] that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper." *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). When a defendant argues that the complaint fails to allege facts supporting a court's exercise of subject-matter jurisdiction, "the plaintiff, in effect, is

afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration" and "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal citation omitted).

## ARGUMENT

The United States has clearly demonstrated that it possesses pre-enforcement standing to challenge the 287(g) Law, and Defendants have never argued otherwise. Accordingly, it is impossible to see how a separate ripeness issue could exist. Though Virginia has not moved to dismiss for a lack of standing, the United States reaffirms its arguments for why it possesses pre-enforcement standing to challenge the 287(g) Law, ECF 9 at 10-14, and thereby demonstrates why any ripeness argument necessarily fails.

### I. The United States Has Pre-Enforcement Standing

The United States possesses standing to challenge the 287(g) Law before all existing agreements are voided on September 1, 2026. ECF 9 at 10-14. Tellingly, Virginia has never contested pre-enforcement standing. Article III standing requires a plaintiff to demonstrate a concrete injury that is fairly traceable to the conduct of the defendant and judicially redressable. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To satisfy this requirement based on the threatened enforcement of a law, "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Rather, that requirement is satisfied where the plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *Maryland Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 363 (4th Cir. 2020) (citations omitted).

As a threshold matter, this is no longer a pre-enforcement challenge in many ways. The law went into effect on July 1, 2026. As a result, no new 287(g) agreements can be entered absent Virginia's onerous conditions regulating the Federal Government's enforcement activities. Va. Code § 15.2-1726.1(E). The United States has made clear that it cannot and will not agree to Virginia's unconstitutional and obstructive requirements. Compl. ¶¶ 12, 113; *see also* Weiss Decl. ¶ 62. As a result, under the 287(g) Law, the United States cannot enter into new agreements with willing participants. That eliminates an extremely important tool for effective law enforcement in Virginia, wasting resources and increasing the dangers of immigration enforcement. Compl. ¶¶ 128-29; Weiss Decl. ¶¶ 50-52, 61. This is an immediate injury that alone provides standing for Counts III, IV, V, and VI.

Although it is unclear whether Defendants' motion presents a facial challenge, a factual challenge, or both, their motion fails regardless. If Defendants bring a factual challenge, the United States undoubtedly possesses standing. The United States submitted a supplemental declaration of Erik Weiss with its reply in support of the motion for a preliminary injunction, which explains that several localities with existing 287(g) agreements have already terminated those agreements because of the 287(g) Law. Weiss Supp. Decl. ¶¶ 6, 8; *see also* ECF 80-1 at 4-5 (termination notices). That is causing ongoing harm to operations by removing invaluable detention support from local facilities. *Id.*

Should the Court construe Defendants' motion as a facial challenge, it still fails because all remaining 287(g) agreements will be voided on September 1, 2026, since the United States is unwilling to modify them to align with Virginia's onerous regulations. Va. Code § 15.2-1726.1(D).

That suffices for pre-enforcement standing. First, the United States asserts "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a [state] statute[.]" *Driehaus*, 573 U.S. at 159 (citation omitted). The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority by complying with Virginia's requirements for 287(g) agreements. Indeed, the very fact that a state is attempting to regulate the conduct of the Federal Government at all, impair existing contracts in violation of the Contract Clause, and impose a preempted law inflicts a "sovereign injury" on the United States. *See* ECF 34 (Memorandum Opinion) at 33 ("It seems rather clear that being subjected to a state law that regulates an activity that is constitutionally delegated to the federal government is an infringement of the Supremacy Clause that constitutes an irreparable injury."); *see also United States v. California*, 173 F.4th 1060, 1069 (9th Cir. 2026) ("[I]rreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity."); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000). Again, the United States cannot and will not agree to Virginia's conditions, thus voiding all 29 existing agreements. Compl. ¶¶ 12, 113; *see also* Weiss Decl. ¶ 62. That poses a serious and concrete injury that the Federal Government is entitled to address through this pre-enforcement challenge.

Second, there is a substantial threat of enforcement of the 287(g) Law. *Driehaus*, 573 U.S. at 159. Again, the 287(g) Law took effect on July 1, 2026. The Attorney General has the ability to sue to enforce the law. Va. Code § 15.2-1726.1(F). Virginia has steadfastly refused to disavow enforcement despite numerous opportunities to do so. *See Chiles v. Salazar*, 146 S. Ct. 1010, 1019 (2026) (refusal to disavow enforcement favored pre-enforcement standing). And at bottom, there is "no reason to assume that the Virginia legislature enacted this statute without intending it to be

enforced." *Mobil Oil Corp. v. Attorney Gen. of Va.*, 940 F.2d 73, 76 (4th Cir.1991).

Third, by voiding all 29 existing agreements, the law will cause irreparable harm to the United States. These agreements are critical to DHS operations in the Commonwealth. Compl. ¶¶ 128-29; Weiss Del. ¶¶ 50-51. The invalidation of these agreements will strip DHS of the vital support of local entities across Virginia that have historically enabled DHS to locate, detain, and transfer dangerous illegal aliens. Weiss Decl. ¶ 50. Losing those agreements will "reduce cooperation between DHS and local officers" and "will thus severely undermine DHS' operational effectiveness in the state." *Id.* So "because state officials [will and have] withdr[awn] resources and manpower that further the enforcement of federal law" the Federal Government has suffered and will suffer a "concrete and particularized" and "actual or imminent" injury. *United States v. Missouri*, 114 F.4th 980, 984 (8th Cir. 2024). Accordingly, the United States has standing to challenge the 287(g) Law.

## II. The Claim is Ripe for Review

Virginia contends that Counts III, IV, V, and VI should be dismissed under Rule 12(b)(1) because the claims relating to the 287(g) Law are unripe where any 287(g) agreements will not be voided until September 1, 2026. MTD at 3. As just explained, however, the United States has pre-enforcement standing and is even currently being injured by the law. Virginia has not contested pre-enforcement standing at any stage. And the existence of "pre-enforcement standing bolsters [Plaintiff's] assertion that its claims are ripe for adjudication." *Inst. for Free Speech v. Johnson*, 148 F.4th 318, 331 (5th Cir. 2025). "In pre-enforcement challenges like this one, the standing and ripeness analyses overlap" and accordingly, Virginia's paltry ripeness arguments should be rejected for many of the same reasons the United States has pre-enforcement standing. *Id.*

"Ripeness is a closely related inquiry to standing that arises in the context of pre-

enforcement challenges." *Hisp. Leadership Fund, Inc. v. Fed. Election Comm'n*, 897 F. Supp. 2d 407, 424 (E.D. Va. 2012). In analyzing ripeness, courts "balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (internal quotation marks and citation omitted). Purely legal challenges are generally fit for review, as are challenges where the "rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." *Charter Fed. Sav. Bank v. Off. of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992). "The hardship prong is measured by the immediacy of the threat and the burden imposed on the [plaintiff] who would be compelled to act under threat of enforcement of the challenged law." *Id.* at 208-09.

The United States' challenge to the 287(g) Law is both fit for judicial review and the United States faces substantial harm absent the Court's consideration of the issue. *Miller*, 462 F.3d at 319. First, this pre-enforcement challenge to the 287(g) Law is fit for judicial review. *See Hisp. Leadership Fund, Inc.*, 897 F. Supp. 2d at 425 (finding a "pre-enforcement action for a declaratory judgment is ripe for adjudication"). The United States has presented a legal challenge to the 287(g) Law, raising claims under the Contract Clause and the Supremacy Clause. *See Charter Fed. Sav. Bank*, 976 F.2d at 20; *see also Retail Indus. Leaders Ass' v. Fielder*, 475 F.3d 180, 188 (4th Cir. 2007) (holding pre-enforcement challenge ripe for review where it "present[ed] purely legal questions" and "because of their certain applicability to" plaintiff). Those challenges raise purely legal questions that do not turn on facts related to specific contracts being voided on September 1, 2026. Virginia does not argue otherwise.

Second, the law is final. It went into effect on July 1, 2026, and there is no risk that Virginia will change course. *See Charter Fed. Sav. Bank*, 976 F.2d at 209. Virginia argues that the law does

not require any present action from the United States. MTD at 3. To the extent that statement is even relevant to the analysis, it is false. The law requires the United States to actively modify its existing 29 agreements with 12 onerous requirements *before* September 1, 2026. Va. Code § 15.2-1726.1(D). The United States has made clear it will not accept Virginia's draconian conditions for future or existing agreements. Compl. ¶¶ 12, 113; *see also* Weiss Decl. ¶ 62. Consequently, all 287(g) agreements between the Federal Government and entities in Virginia will be invalidated in just over two weeks. *Id.* And because the 287(g) Law went into effect on July 1, 2026, new agreements or renewals are *already* prohibited where they do not comply with the onerous conditions set out in the new law. Va. Code § 15.2-1726.1(C). There is nothing speculative about that. *Contra* MTD at 3. This is especially true if Defendants' motion is construed as a factual challenge to subject matter jurisdiction, as localities are already stating their intention to terminate vital agreements because of the 287(g) Law, and the United States refuses to modify any agreements in compliance with that law. *See* Weiss Supp. Decl. ¶¶ 6-9. This Court need not delay in its assessment of the constitutionality of the 287(g) Law, and Defendants never explain what – if any – relevant factors will change after September 1, 2026.

Third, it is certain that the United States will face hardship as a result of the termination of its 287(g) agreements in Virginia. *See Air Evac EMS, Inc. v. Cheatham*, 260 F. Supp. 3d 628, 638 (S.D. W. Va. 2017) ("[T]he application of [the challenged provision to plaintiff] is certain, as is [plaintiff's] inability to escape liability under the statute unless it complies with the altered billing requirements now. This is a present, concrete hardship that makes [plaintiff's] pre-enforcement challenge appropriate for judicial resolution."); *see* ECF 9 (PI Memo) at 27 (discussing the harms the United States will suffer upon the termination of the remaining 287(g) agreements in Virginia). Virginia claims that because there are allegedly "no present obligations on federal agencies and no

immediate consequences for non-compliance[,]" withholding review imposes no hardship on the United States. MTD at 3-4. Again, that is false, as the 287(g) Law requires the United States to, *at present*, modify its agreements. Because the United States will not do so, all remaining 287(g) agreements in Virginia will be voided in a matter of weeks. As explained, the invalidation of these agreements will cause substantial irreparable injuries to the United States. Compl. ¶ 129; PI Memo at 27. Accordingly, this matter is ripe for judicial review.

Under Virginia's interpretation, the United States must wait for its existing 287(g) agreements to be voided on September 1, 2026, to seek judicial relief. MTD at 3-4. But Virginia noticeably cites no legal authority to justify this novel approach. Adopting Virginia's position would undermine the very purpose of preliminary injunctive relief: to preserve the status quo and prevent irreparable harm. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). Virginia's position would foreclose judicial relief until a party suffers the harm it seeks to avoid via judicial order, eviscerating pre-enforcement standing and preliminary injunctions. Ironically, if the United States did wait, Virginia would likely argue that no preliminary relief was available because of the delay. *See, e.g.,* ECF 22 at 18 (advancing delay argument as to Mask Ban Law). Virginia's argument is wrong and should be rejected.

Finally, this motion demonstrates a disregard for judicial resources. It appears that Virginia is suggesting that the United States file an amended complaint in just over two weeks explaining that all 287(g) agreements were voided by operation of the 287(g) Law, triggering a new round of briefing. That would defeat the entire purpose of the preliminary injunction the United States sought. Virginia attempts to immunize itself through the mere concept of time, suggesting that the United States must first suffer a completed irreparable harm before it can file suit. Virginia offers no legal basis for this proposition, and this Court should reject it.

**CONCLUSION**

The United States respectfully requests that this Court should deny Virginia's 12(b)(1) Motion to Dismiss Counts III, IV, V, and VI of Plaintiff's Complaint in its entirety.

DATED: August 14, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

*/s/ Gerard Mene*
GERARD MENE
Assistant United States Attorney
Eastern District of Virginia
Counsel for the United States
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Gerard.Mene@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TIBERIUS DAVIS
Counsel to the Assistant Attorney General

JACQUELINE COLEMAN SNEAD
Deputy Director

ALEXANDRA MCTAGUE SCHULTE
Senior Litigation Counsel

By: *s/ Alessandra Faso*
ALESSANDRA FASO
Senior Litigation Counsel
U.S. Department of Justice Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044
202-451-7728
Alessandra.faso@usdoj.gov