# EXHIBIT A

# MEMORANDUM OF AGREEMENT
## 287(g) Task Force Model

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the Shenandoah Police Department, pursuant to which ICE delegates to nominated, trained, and certified officers or employees of the Shenandoah Police Department (hereinafter interchangeably referred to as "Law Enforcement Agency" (LEA)), the authority to perform certain immigration enforcement functions as specified herein. The LEA represents Shenandoah Police Department in the implementation and administration of this MOA. The LEA and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein. The ICE and LEA points of contact for purposes of this MOA are identified in Appendix A.

## I. PURPOSE

The purpose of this MOA is to set forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and thereafter be approved by ICE to perform certain functions of an immigration officer under the direction and supervision of ICE within the LEA's jurisdiction. This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA. This MOA also describes the complaint procedures available to members of the public regarding immigration enforcement actions taken pursuant to this agreement by participating LEA personnel.

## II. AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-296, authorizes the Secretary of Homeland Security, or her designee, to enter into written agreements with a State or any political subdivision of a State so that qualified officers and employees can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

## III. POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating LEA personnel be subject to ICE direction and supervision while performing delegated immigration officer functions pursuant to this MOA. For the purposes of this MOA, ICE officers will provide direction and supervision for participating LEA personnel only as to immigration enforcement functions as authorized in this MOA. The LEA retains supervision of all other aspects of the employment and performance of duties of participating LEA personnel.

## IV. TRAINING AND ASSIGNMENTS

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory training on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed as provided by ICE instructors and thereafter pass examinations equivalent to those given to ICE officers. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE. Only participating LEA personnel who are nominated, trained, certified, and authorized, as set out herein, have authority pursuant to this MOA to conduct the delegated immigration officer functions, under ICE direction and supervision, enumerated in this MOA.

Upon the LEA's agreement, participating LEA personnel performing immigration-related duties pursuant to this MOA will be assigned to various units, teams, or task forces designated by ICE.

## V. DESIGNATION OF AUTHORIZED FUNCTIONS

For the purposes of this MOA, participating LEA personnel are authorized to perform the following functions pursuant to the stated authorities, subject to the limitations contained in this MOA:

- The power and authority to interrogate any alien or person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(1)) and to process for immigration violations those individuals who have been arrested for State or Federal criminal offenses.

- The power and authority to arrest without a warrant any alien entering or attempting to unlawfully enter the United States in the officer's presence or view, or any alien in the United States, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(2) and 8 C.F.R. § 287.5(c)(1). Subsequent to such arrest, the arresting officer must take the alien without unnecessary delay for examination before an immigration officer having authority to examine aliens as to their right to enter or remain in the United States.

- The power to arrest without warrant for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(4) and 8 C.F.R. § 287.5(c)(2).

- The power to serve and execute warrants of arrest for immigration violations under INA § 287(a) and 8 C.F.R. § 287.5(e)(3).

- The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)) to complete required alien processing to include fingerprinting,

photographing, and interviewing, as well as the preparation of affidavits and the taking of sworn statements for ICE supervisory review.

- The power and authority to prepare charging documents (INA § 239, 8 C.F.R. § 239.1; INA § 238, 8 C.F.R § 238.1; INA § 241(a)(5), 8 C.F.R § 241.8; INA § 235(b)(l), 8 C.F.R. § 235.3) including the preparation of the Notice to Appear (NTA) or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors.

- The power and authority to issue immigration detainers (8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for aliens in categories established by ICE supervisors.

- The power and authority to take and maintain custody of aliens arrested by ICE, or another State or local law enforcement agency on behalf of ICE. (8 C.F.R. § 287.5(c)(6))

- The power and authority to take and maintain custody of aliens arrested pursuant to the immigration laws and transport (8 C.F.R. § 287.5(c)(6)) such aliens to ICE-approved detention facilities.

## VI. RESOLUTION OF LOCAL CHARGES

The LEA is expected to pursue to completion prosecution of any state or local charges that caused the alien to be taken into custody. ICE may assume custody of aliens who have been convicted of a state or local offense only after such aliens have concluded service of any sentence of incarceration. The ICE Enforcement and Removal Operations Field Office Director or designee shall assess on a case-by-case basis the appropriate actions for aliens who do not meet the above criteria based on special interests or other circumstances after processing by the LEA.

After notification to and coordination with the ICE supervisor, the alien whom participating LEA personnel have determined to be removable will be arrested on behalf of ICE by participating LEA personnel and be transported by the LEA on the same day to the relevant ICE detention office or facility.

## VII. NOMINATION OF PERSONNEL

The chief officer of the LEA will nominate candidates for initial training and certification under this MOA. For each candidate, ICE may request any information necessary for a background check and to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two years of LEA work experience. All candidates must be approved by ICE and must be able to qualify for appropriate federal security clearances and access to appropriate DHS and ICE databases/systems and associated applications.

Should a candidate not be approved, a substitute candidate may be submitted if time permits such substitution to occur without delaying the start of training. Any subsequent expansion in the number of participating LEA personnel or scheduling of additional training classes may be based

on an oral agreement of the parties but will be subject to all the requirements of this MOA.

## VIII. TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with the mandatory training tailored to the immigration functions to be performed. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE.

Training will include, among other things: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) civil rights laws; (vi) the detention of aliens; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligations under federal law, including applicable treaties or international agreements, to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational issues related to the performance of immigration officer functions, unless either party terminates this MOA pursuant to Section XVIII below. Local training on relevant issues will be provided on an ongoing basis by ICE supervisors or a designated team leader.

## IX. CERTIFICATION AND AUTHORIZATION

ICE will certify in writing the names of those LEA personnel who successfully complete training and pass all required testing. Upon certification, ICE will provide the participating LEA personnel with a signed authorization to perform specified functions of an immigration officer for an initial period of two years from the date of the authorization. ICE will also provide a copy of the authorization to the LEA. The ICE supervisory officer, or designated team leader, will evaluate the activities of all personnel certified under this MOA.

Authorization of participating LEA personnel to act pursuant to this MOA may be revoked at any time and for any reason by ICE or the LEA. Such revocation will require notification to the other party to this MOA within 48 hours. The chief officer of the LEA and ICE will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA, pursuant to Section XVIII below, shall constitute revocation of all immigration enforcement authorizations delegated herein.

## X. COSTS AND EXPENDITURES

Participating LEA personnel will carry out designated functions at the LEA's expense, including salaries and benefits, local transportation, and official issue material. Whether or not the LEA receives financial reimbursement for such costs through a federal grant or other funding mechanism is not material to this MOA.

ICE is responsible for the installation and maintenance of the Information Technology (IT) infrastructure. The use of the IT infrastructure and the DHS/ICE IT security policies are

defined in the Interconnection Security Agreement (ISA). The ISA is the agreement between ICE's Chief Information Security Officer and the LEA's Designated Accreditation Authority. The LEA agrees that each of its sites using an ICE-provided network access or equipment will sign the ISA, which defines the DHS ICE 4300A Sensitive System Policy and Rules of Behavior for each user granted access to the DHS network and software applications. Failure to adhere to the terms of the ISA could result in the loss of all user privileges.

The LEA is responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material used in the execution of the LEA's mission. ICE will provide instructors and training materials. The LEA is responsible for the salaries and benefits, including any overtime, of all its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating LEA personnel while they are receiving training. ICE is responsible for the costs of the LEA personnel's travel expenses while in a training status, as authorized by the Federal Travel Regulation and the ICE Travel Handbook. These expenses include housing, per diem and all transportation costs associated with getting to and from training. ICE is responsible for the salaries and benefits of all ICE personnel, including instructors and supervisors.

The LEA is responsible for providing all administrative supplies (e.g. paper, printer toner) necessary for normal office operations. The LEA is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints, etc.

## XI. ICE SUPERVISION

Immigration enforcement activities conducted by participating LEA personnel will be supervised and directed by ICE. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE.

When operating in the field, participating LEA personnel shall contact an ICE supervisor at the time of exercising the authority in this MOA, or as soon as is practicable thereafter, for guidance. The actions of participating LEA personnel will be reviewed by the ICE supervisory officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for additional training or guidance for that specific individual.

For the purposes of this MOA, ICE officers will provide supervision of participating LEA personnel only as to immigration enforcement functions. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law unless doing so would violate

federal law.

If a conflict arises between an order or direction of an ICE supervisory officer and LEA rules, standards, or policies, the conflict shall be promptly reported to ICE, and the chief officer of the LEA, or designee, when circumstances safely allow the concern to be raised. ICE and the chief officer of the LEA shall attempt to resolve the conflict.

Whenever possible, the LEA will deconflict all addresses, telephone numbers, and known or suspected identities of violators of the INA with ICE's Homeland Security Investigations or ICE's Enforcement and Removal Operations prior to taking any enforcement action. This deconfliction will, at a minimum include wants/warrants, criminal history, and a person's address, and vehicle check through TECS II or any successor system.

LEA participating personnel authorized pursuant to this MOA may be assigned and/or co-located with ICE as task force officers to assist ICE with criminal investigations.

## XII. REPORTING REQUIREMENTS

The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and verification with ICE's own data and statistical information, as well as for ICE's statistical reporting requirements and to assess the progress and success of the LEA's 287(g) program.

## XIII. RELEASE OF INFORMATION TO THIRD PARTIES

The LEA may, at its discretion, communicate the substance of this agreement to the media and other parties expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the LEA is authorized to do the same.

The LEA hereby agrees to coordinate with ICE prior to releasing any information relating to, or exchanged under, this MOA. For releases of information to the media, the LEA must coordinate in advance of release with the ICE Office of Public Affairs, which will consult with ICE Privacy Office for approval prior to any release. The points of contact for ICE and the LEA for this purpose are identified in Appendix C. For releases of information to all other parties, the LEA must coordinate in advance of release with the FOD or the FOD's representative.

Information obtained or developed as a result of this MOA, including any documents created by the LEA that contain information developed or obtained as a result of this MOA, is under the control of ICE and shall not be disclosed unless: 1) permitted by applicable laws, regulations, or executive orders; and 2) the LEA has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties. LEA questions regarding the

applicability of this section to requests for release of information shall be directed to an ICE officer.

Nothing herein limits LEA's compliance with state public records laws regarding those records that are solely state records and not ICE records.

The points of contact for ICE and the LEA for the above purposes are identified in Appendix C.

## XIV. LIABILITY AND RESPONSIBILITY

Except as otherwise noted in this MOA or allowed by federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the LEA will be responsible and bear the costs of participating LEA personnel regarding their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will be treated as Federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. *See* 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. In addition, it is the understanding of the parties to this MOA that participating LEA personnel performing a function on behalf of ICE authorized by this MOA will be considered acting under color of federal authority for purposes of determining liability and immunity from suit under federal or state law. *See* 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as personal-capacity defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. *See* 28 C.F.R. § 50.15. Absent exceptional circumstances, such requests must be made in writing. LEA personnel who wish to submit a request for representation shall notify the local ICE Office of the Principal Legal Advisor (OPLA) field location at OPLA-DCLD-TortClaims@ice.dhs.gov. ICE OPLA, through its headquarters, will assist LEA personnel with the request for representation, including the appropriate forms and instructions. Unless OPLA concludes that representation clearly is unwarranted, it will forward the request for representation, any supporting documentation, and an advisory statement opining whether: 1) the requesting individual was acting within the scope of his/her authority under 8 U.S.C. § 1357(g) and this MOA; and, 2) such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Tort Litigation Section, Civil Division, Department of Justice (DOJ). Representation is granted at the discretion of DOJ; it is not an entitlement. *See* 28 C.F.R. § 50.15.

The LEA agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents. Failure to do so may result in the termination of this MOA. Failure of any participating LEA employee to cooperate in any federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The LEA agrees to cooperate with federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be

used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its progeny.

As the activities of participating LEA personnel under this MOA derive from federal authority, the participating LEA personnel will comply with federal standards relating to the Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, which govern the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

The LEA and ICE are each responsible for compliance with the Privacy Act of 1974, 5 U.S.C. § 552a, DHS Privacy Act regulations, 6 C.F.R. §§ 5.20-5.36, as applicable, and related system of records notices regarding data collection and use of information under this MOA.

## XV. COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating LEA personnel, regarding activities undertaken under the authority of this MOA, is included at Appendix B.

## XVI. CIVIL RIGHTS STANDARDS

Participating LEA personnel who perform certain federal immigration enforcement functions are bound by all applicable federal civil rights statutes and regulations.

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA as needed.

## XVII. MODIFICATION OF THIS MOA

Modifications of this MOA must be proposed in writing and approved by the signatories.

## XVIII. EFFECTIVE DATE, SUSPENSION, AND TERMINATION OF THIS MOA

This MOA becomes effective upon signature of both parties and will remain in effect until either party terminates or suspends the MOA. Termination by the LEA shall be provided, in writing, to the local Field Office.

In instances where serious misconduct or violations of the terms of the MOA come to the attention of ICE, the ICE Director may, upon recommendation of the Executive Associate Director for Enforcement and Removal Operations, elect to immediately suspend the MOA pending investigation of the misconduct and/or violations.

Notice of the suspension will be provided to the LEA, and the notice will include, at a minimum, (1) an overview of the reason(s) that ICE is suspending the 287(g) agreement, (2) the length of the temporary suspension, and (3) how the LEA can provide ICE with information regarding the alleged

misconduct and/or violations, as well as any corrective measures it has undertaken.

ICE shall provide the LEA with a reasonable opportunity to respond to the alleged misconduct and/or violations and to take actions to implement corrective measures (e.g., replace the officer(s) who are the focus of the allegations). ICE will provide the LEA timely notice of a suspension being extended or vacated.

If the LEA is working to take corrective measures, ICE will generally not terminate an agreement. The termination of an agreement is generally reserved for instances involving problems that are unresolvable and detrimental to the 287(g) Program.

If ICE decides to move from suspension to termination, ICE will provide the LEA a 90-day notice in advance of the partnership being terminated. The notice will include, at a minimum: (1) An overview of the reason(s) that ICE seeks to terminate the 287(g) agreement; (2) All available data on the total number of aliens identified under the 287(g) agreement; and (3) Examples of egregious criminal aliens identified under the 287(g) agreement. ICE's decision to terminate a MOA will be published on ICE's website 90 days in advance of the MOA's termination.

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

**For the LEA:**

Date: 6/9/26

Signature: [signature]

Name: Rodney Hensley

Title: Chief

Agency: Shenandoah Police Department

**For ICE:**

Date: 06/09/2026

Signature: [signature]

Name: Russell Hott

Title: Assistant Director

Agency: Department of Homeland Security

U.S. Immigration and Customs Enforcement

## APPENDIX A

## POINTS OF CONTACT

The ICE and LEA points of contact for purposes of implementation of this MOA are:

For ICE:

Department of Homeland Security
Immigration and Customs Enforcement
Enforcement and Removal Operations
Assistant Director for Enforcement
Washington DC

For the LEA:

N. W. Baugher
Captain
540-652-8193
411 Second Street, Shenandoah, Va.
Nbaugher@townofshenandoah.com

## APPENDIX B

## COMPLAINT PROCEDURE

This MOA is an agreement between ICE and the Shenandoah Police Department, hereinafter referred to as the "Law Enforcement Agency" (LEA), in which selected LEA personnel are authorized to perform immigration enforcement duties in specific situations under federal authority. As such, the training, supervision, and performance of participating LEA personnel pursuant to the MOA, as well as the protections for individuals' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through these complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

If any participating LEA personnel are the subject of a complaint or allegation involving the violation of the terms of this MOA the LEA shall, to the extent allowed by state law, make timely notification to ICE.

Further, if the LEA is aware of a complaint or allegation of any sort that may result in that individual receiving professional discipline or becoming the subject of a criminal investigation or civil lawsuit, the LEA shall remove the designated LEA personnel from the program, until such time that the LEA has adjudicated the allegation.

The LEA will handle complaints filed against LEA personnel who are not designated and certified pursuant to this MOA but are acting in immigration functions in violation of this MOA. Any such complaints regarding non-designated LEA personnel acting in immigration functions must be forwarded to the ICE Office of Professional Responsibility (OPR) at ICEOPRIntake@ice.dhs.gov.

### 1. Complaint Reporting Procedures

Complaint reporting procedures shall be disseminated as appropriate by the LEA within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that individuals are aware of the availability of such procedures. Complaints will be accepted from any source (e.g., ICE, LEA, participating LEA personnel, inmates, and the public).

Complaints may be reported to federal authorities as follows:

A. Telephonically to the ICE OPR at the toll-free number 1-833-4ICE-OPR; or

B. Via email at ICEOPRIntake@ice.dhs.gov.

Complaints may also be referred to and accepted by any of the following LEA entities:

A. The LEA Internal Affairs Division; or
B. The supervisor of any participating LEA personnel.

**2. Review of Complaints**

All complaints (written or oral) reported to the LEA directly, which involve activities connected to immigration enforcement activities authorized under this MOA, will be reported to the ICE OPR. The ICE OPR will verify participating personnel status under the MOA with the assistance of ICE. Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures.

In all instances, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to the ICE OPR will be shared with the LEA's Internal Affairs Division when the complaint involves LEA personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

**3. Complaint Resolution Procedures**

Upon receipt of any complaint the ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements. As stated above the ICE OPR will adhere to existing ICE reporting requirements as they relate to the DHS OIG and/or another legally required entity. Complaints will be resolved using the existing procedures, supplemented as follows:

A. Referral of Complaints to LEA Internal Affairs Division.

The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Internal Affairs Division for resolution. The Internal Affairs Division Commander will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

B. Interim Action Pending Complaint Resolution

Whenever any participating LEA personnel are under investigation and subject to interrogation by the LEA for any reason that could lead to disciplinary action, demotion, or dismissal, the policy requirements of' the LEA shall he honored. If appropriate, an individual may he removed from participation in the activities covered under the MOA pending resolution of an inquiry.

C. Time Parameters for Resolution of Complaints

It is expected that any complaint received will be resolved within 90 days. However, this will depend upon the nature and complexity of the substance of the complaint itself.

D. Notification of Resolution of a Complaint

ICE OPR will coordinate with the LEA's Internal Affairs Division to ensure notification as appropriate to the subject(s) of a complaint regarding the resolution of the complaint.

# APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XIII of this MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:

**For the LEA:**

Rodney Hensley

Chief

540-652-8193

411 Second Street, Shenandoah,Va.

Rhensley@townofshenandoah.com

**For ICE:**

Department of Homeland Security
Immigration and Customs Enforcement
Office of Public Affairs